JEFFREY S. WRUBLE (SBN: 94734)
   Email: jwruble@buchalter.com
WILLIAM S. BRODY (SBN 136136)
   Email: wbrody@buchalter.com
DAVID E. MARK (SBN: 247283)
   Email: dmark@buchalter.com
SHIR DAVIDOVICZ (SBN: 321042)
   Email: sdavidovicz@buchalter.com
BUCHALTER
A Professional Corporation
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA  90017-2457
Telephone: (213)  891-0700
Facsimile:  (213)  896-0400

Attorneys for Plaintiff, HFC ACCEPTANCE, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HFC ACCEPTANCE, LLC, a California limited liability company,<br><br>                Plaintiff,<br><br>         vs.<br><br>AEZ Rent A Car LLC, a New York limited liability company;<br>ICR Group LLC, a New York limited liability company;<br>JHRC Corp, a New York corporation;<br>The Bar, LLC, a New York limited liability company;<br>WCR Group, LLC, a New York limited liability company;<br>YTS Group, LLC, a New York limited liability company;<br>Yitzchok M. Birnhack, an individual domiciled in New York,<br><br>                Defendants. | Case No:<br><br>**COMPLAINT FOR:**<br><br>1.   Breach of Written Contract;<br>2.   Money Lent;<br>3.   Account Stated;<br>4.   Recovery of Personal Property;<br>5.   Breach of Guaranty;<br>6.   Breach of Guaranty. |

1       Plaintiff, HFC Acceptance, LLC, a California limited liability company

2   ("HFC") complains and alleges as follows:

3                    **JURISDICTION AND VENUE**

4       1.      Jurisdiction is based on 28 U.S.C. §§1332 and 1348 in that this is a

5   civil action between citizens of different states and in which the matter in

6   controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7       2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2)

8   because a substantial part of the events giving rise to this action occurred in this

9   judicial district.  The subject contracts and guaranties were prepared and negotiated

10  in Los Angeles, California, where Plaintiff maintains its principal office and

11  performance of the contracts and guaranties, i.e. receipt and application of

12  payments of amounts due, was to take place.  Additionally, the contracts and

13  guaranties that are the subject of this action contain venue clauses that provide that

14  the parties consent to venue before the courts located in Los Angeles, California.

15      3.      Plaintiff is a citizen of the State of California.  Plaintiff is informed

16  and believes, and based thereon alleges, that each Defendant is a citizen of the State

17  of New York.

18      4.      The subject contract also provides for the Arbitration of Disputes and

19  Waiver of a Jury Trial. Plaintiff expressly reserves its right to arbitration.[1]

20  \\\

21

22

23

24

25  _____

    [1] This suit has been filed to enable Plaintiff to seek provisional remedies to which it
26  is entitled.  By filing this action, Plaintiff is not intending to waive its rights to
    arbitration, which is provided for in the subject contract. Plaintiff expressly reserves
27  its rights to arbitration under the terms of those contracts as well as applicable
    California law.  Accordingly, Plaintiff hereby expressly reserves the right to
28  commence arbitration, as set forth in some of the contracts sued upon, in Los
    Angeles County.

## THE PARTIES

5.     Plaintiff is a California limited liability company with its principal place of business and main office located in the City of Los Angeles, County of Los Angeles, State of California.

6.     Plaintiff is informed and believes, and based thereon alleges, that Defendant AEZ Rent A Car LLC ("AEZ") is a New York limited liability company with its principal place of business located in the City of New York (Borough of Brooklyn), County of Kings, State of New York.

7.     Plaintiff is informed and believes, and based thereon alleges, that Defendant ICR Group LLC ("ICR") is a New York limited liability company with its principal place of business located in the City of New York (Borough of Brooklyn), County of Kings, State of New York.

8.     Plaintiff is informed and believes, and based thereon alleges, that Defendant JHRC Corp ("JHRC") is a New York corporation with its principal place of business located in the City of New York (Borough of Brooklyn), County of Kings, State of New York.

9.     Plaintiff is informed and believes, and based thereon alleges, that Defendant The Bar, LLC ("The Bar") is a New York limited liability company with its principal place of business located in the City of New York (Borough of Brooklyn), County of Kings, State of New York.

10.     Plaintiff is informed and believes, and based thereon alleges, that Defendant WCR Group, LLC ("WCR") is a New York limited liability company with its principal place of business located in the City of New York (Borough of Brooklyn), County of Kings, State of New York.

11.     Plaintiff is informed and believes, and based thereon alleges, that Defendant YTS Group, LLC ("YTS" and collectively with AEZ, ICR, JHRC, The Bar, and WCR, "Defendant Borrowers" and each individually, "Borrower Defendant") is a New York limited liability company with its principal place of

business located in the City of New York (Borough of Brooklyn), County of Kings, State of New York.

12.     Plaintiff is informed and believes, and based thereon alleges, that Defendant Yitzchok M. Birnhack ("Birnhack") is domiciled in the State of New York.

13.     Plaintiff is informed and believes, and based thereon alleges, that Defendant Borrowers are affiliated companies and, at all relevant times, were engaged in interstate commerce.

14.     As set forth in detail below, the claims in this Complaint are based upon a transaction in which Plaintiff provided financing in the form of loans to Defendant Borrowers that Defendant Borrowers used to pay the purchase price for the purchase of 55 motor vehicles (the "HFC Financed Vehicles") that Defendant Borrowers' use as equipment in their car rental businesses.  Plaintiff is informed and believes, and based thereon alleges, that the HFC Financed Vehicles have been intermingled at various locations maintained by Defendant Borrowers at various locations in New York and New Jersey and that Defendant Borrowers rent the HFC Financed Vehicles a short term license arrangement to consumers.  Accordingly, the exact location of any of the HFC Financed Vehicles at any given time are known only by Defendant Borrowers.

## FIRST CLAIM FOR RELIEF

### Breach of Written Contract

### Plaintiff Against Defendant Borrowers

15.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 14, inclusive, of the Complaint as if those allegations were set forth herein.

16.     On or about October 6, 2022, Plaintiff and Defendant Borrowers entered into a Master Fleet Finance Agreement dated as of October 5, 2022 (the "Loan Agreement"), a Commercial Security Agreement  (the "Security

Agreement"), and other related documents (collectively with the Loan Agreement and Security Agreement, the "Loan Documents"). True copies of the Loan Agreement and Security Agreement are attached hereto as **Exhibits "1"** and **"2,"** respectively, and incorporated herein by reference.

17.     Pursuant to the Loan Documents, Plaintiff agreed to provide and did provide financing as loans to Defendant Borrowers that Defendant Borrowers used to pay the purchase price for the purchase by Defendant Borrowers of the HFC Financed Vehicles. Pursuant to the Loan Agreement and other Loan Documents, Defendant Borrowers, jointly and severally, agreed to make certain payments and perform certain obligations owed to Plaintiff, and to be bound by the terms and conditions set forth in the Loan Documents.

18.     Pursuant to the Security Agreement, each Defendant Borrower granted Plaintiff a security interest in the HFC Financed Vehicle owned by such Defendant Borrower and other assets owned by such Defendant Borrower described as "Collateral" in the Security Agreement (collectively, "Collateral") to secure the prompt and unconditional performance of the obligations of and the repayment of indebtedness owed by Defendant Borrowers to Plaintiff under the Loan Documents.

19.     Plaintiff's security interest in the HFC Financed Vehicles and other Collateral is perfected by the following:

(a)     The registration of HFC as a holder of interest ("lien holder") on the certificates of title on 50 of the HFC Financed Vehicles.

(b)     The application for registration of HFC as a holder of interest ("lien holder") on the certificates of title on five of the HFC Financed Vehicles.

(c)     The filing of the UCC 1 Financing Statement on October 21, 2022, with the New York Secretary of State, designated as Filing Number: 202210210443859, with respect to the interest of Plaintiff, as "secured party," in the assets of Defendant AEZ, as "debtor," described as "collateral" therein, a true

copy of which is attached hereto as **Exhibit "3"** and incorporated herein by reference.

        (d)     The filing of the UCC 1 Financing Statement on October 21, 2022, with the New York Secretary of State, designated as Filing Number: 202210210443811, with respect to the interest of Plaintiff, as "secured party," in the assets of Defendant ICR, as "debtor," described as "collateral" therein, a true copy of which is attached hereto as **Exhibit "4"** and incorporated herein by reference.

        (e)     The filing of the UCC 1 Financing Statement on October 21, 2022, with the New York Secretary of State, designated as Filing Number: 202210210443772, with respect to the interest of Plaintiff, as "secured party," in the assets of Defendant JHRC, as "debtor," described as "collateral" therein, a true copy of which is attached hereto as **Exhibit "5"** and incorporated herein by reference.

        (f)     The filing of the UCC 1 Financing Statement on October 24, 2022, with the New York Secretary of State, designated as Filing Number: 202210210448425, with respect to the interest of Plaintiff, as "secured party," in the assets of Defendant The Bar, as "debtor," described as "collateral" therein, a true copy of which is attached hereto as **Exhibit "6"** and incorporated herein by reference.

        (g)     The filing of the UCC 1 Financing Statement on October 21, 2022, with the New York Secretary of State, designated as Filing Number: 202210210443847, with respect to the interest of Plaintiff, as "secured party," in the assets of Defendant WCR, as "debtor," described as "collateral" therein, a true copy of which is attached hereto as **Exhibit "7"** and incorporated herein by reference.

        (h)     The filing of the UCC 1 Financing Statement on October 21, 2022, with the New York Secretary of State, designated as Filing Number:

202210210443796, with respect to the interest of Plaintiff, as "secured party," in the assets of Defendant YTS, as "debtor," described as "collateral" therein, a true copy of which is attached hereto as **Exhibit "8"** and incorporated herein by reference.

20. The Loan Agreement further provides, among other terms, that in addition to the repayment of principal, interest, and other amounts due pursuant to the terms of the Loan Documents, should Defendant Borrowers fail to make any payment on the date such payment is due, Defendant Borrowers agree to pay to Plaintiff a late payment charge in an amount equal to 5.00% of the amount not paid by the due date.

**Defaults**

21. Defaults and events of default under the Loan Documents have occurred and are continuing, including, among other defaults, the following:

(a) Defendant Borrowers' failure to timely make payment of amounts due under the Loan Agreement when due (the "Existing Payment Defaults") in the aggregate amount of $275,960.84, consisting of principal in the amount of $203,318.95, interest in the amount of $60,650.95, and late fee in the amount of $11,990.94, consisting of the following amounts (the "Existing Payment Defaults"):

(i) $24,282.79 as of April 30, 2023, and due on May 10, 2023, consisting of principal in the amount of $24,282.79.

(ii) $67,717.32 as of May 31, 2023, and due on June 10, 2023, consisting of principal in the amount of $48,323.79, interest in the amount of $16,571.15, and late fee in the amount of $2,233.38.

(iii) $61,512.19 as of June 30, 2023, and due on July 10, 2023, consisting of principal in the amount of $43,570.79, interest in the amount of $14,649.84, and late fee in the amount of $3,291.56.

(iv)     $61,272.79 as of July 31, 2023, and due on August 1, 2023, consisting of principal in the amount of $43,570.79, interest in the amount of $14,738.13, and late fee in the amount of $2,963.87.

(v)     $61,175.75 as of August 31, 2023, and due on September 10, 2023, consisting of principal in the amount of $43,570.79, interest in the amount of $14,691.83, and late fee in the amount of $2,913.13.

(vi)     $5,217.95 as of September 11, 2023, consisting of interest accruing in the amount of $5,217.85, accruing from September 1, 2023, through September 11, 2023.

(b)     The inability of Defendant Borrowers to pay their debts as they mature; and

(c)     The making by Defendant Borrowers of false representations and statements to Plaintiff.

22.     On July 10, 2023, Plaintiff served on Defendants written notice of the occurrence and continuation of the Existing Payment Defaults (the "Notice of Default") pursuant to which Plaintiff provided notice to Defendants of (a) the occurrence of the Existing Payment Defaults, (b) the acceleration of all obligations and amounts due under the Loan Documents, (b) the demand for immediate payment by Defendant Borrowers under the Loan Documents and Guaranties (as defined herein) of all indebtedness and obligations owed to Plaintiff under the Loan Documents and Guaranties in full, and (c) the demand for the immediate delivery of possession to Plaintiff of the HFC Financed Vehicles. This Complaint also serves as further notice of (a) the occurrence of the Existing Payment Defaults, (b) the acceleration of all obligations and amounts due under the Loan Documents and Guaranties, (b) the demand for immediate payment by Defendant Borrowers under the Loan Documents and Guaranties of all indebtedness and obligations owed to Plaintiff under the Documents and Guaranties in full, and (c) the demand for the immediate delivery of possession to Plaintiff of the HFC Financed Vehicles.  A true

copy of the Notice of Default is attached hereto as **Exhibit "9"** and incorporated herein by reference.

23.    Defendant Borrowers failed and refused to pay the sum due and owing to Plaintiff and to deliver immediate possession of the HFC Financed Vehicles to Plaintiff notwithstanding the demand included in the Notice of Default.

24.    As of September 11, 2023, the total indebtedness that remains due, owing, and payable under the Loan Documents by Defendant Borrowers is $1,603,926.59, representing the total unpaid principal, interest, late charges, and other amounts due as provided in the Loan Documents as of September 11, 2023, plus additional interest, late charges, and other amounts due as provided in the Loan Documents (including without limitation obligations relating to the reimbursement of attorneys' fees and costs incurred by Plaintiff), which amounts will continue to accrue until paid, according to the terms of the Loan Documents.

25.    The Loan Documents also provide that Defendant Borrowers agree to pay to Plaintiff amounts equal to the sum of attorneys' fees and costs incurred by Plaintiff in connection with the enforcement by Plaintiff of its rights and remedies under the Loan Documents.   Plaintiff has retained the law firm of Buchalter, A Professional Corporation, for the purpose of instituting and prosecuting this action and enforcing its rights and remedies under the Loan Documents.

26.    Plaintiff has performed all its obligations, covenants, and conditions under the Loan Documents that Plaintiff agreed to perform, except for those obligations, covenants, and conditions excused by the acts or omissions of Defendants.

27.    Pursuant to the Loan Agreement, Defendant Borrowers have acknowledged Plaintiff's right to the appointment of a receiver to possess and administer the HFC Financed Vehicles and other Collateral.  As a result of the defaults alleged herein, under the terms of the Loan Documents and pursuant to

Federal Rule of Civil Procedure 66, Plaintiff is entitled to the appointment of a receiver in order to protect itself against irreparable harm.

28.    Because the HFC Finance Vehicles are (a) mobile, (b) in the possession of and driven by unknown third parties who are customers of Defendant Borrowers, (c) in immediate risk of damage, destruction, serious harm, concealment, transfer, or removal from wherever the HFC Financed Vehicles may be located at any given time, (d) subject to depreciation, and (e) likely uninsured or underinsured, it is imperative that a receiver be appointed immediately with all of the usual and customary powers of a receiver, including, without limitation, (X) locating and assembling and taking possession of the HFC Financed  Vehicles and other Collateral, wherever located, in order to fully administer and protect such assets, (Y) collecting proceeds of or arising from the use of the HFC Financed Vehicles (the "HFC Collateral Proceeds" and collectively with the HFC Financed Vehicles, the "HFC Receivership Property") and forwarding HFC Collateral Proceeds to Plaintiff, and (Z) taking all appropriate measures that are necessary to protect the HFC Receivership Property.

29.    Unless a receiver is immediately appointed, the HFC Receivership Property is at risk of being lost, secreted, or misappropriated, or at a minimum, will greatly dissipate in value, all to the detriment of and irreparable harm to Plaintiff. In particular, the increasing mileage and age and continued "wear and tear" on the HFC Financed Vehicles will diminish the value of such HFC Financed Vehicles each day.

30.    Plaintiff has no speedy or adequate remedy at law and will suffer irreparable damage, injury, and harm unless the appropriate equitable relief is granted.

///

## SECOND CLAIM FOR RELIEF

### For Money Lent

### Plaintiff Against Defendant Borrowers

31.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 14 and 16 through 30, inclusive, in this Complaint, which are incorporated herein by reference.

32.     Within the last year, Defendant Borrowers became indebted to Plaintiff in the sum of not less than $1,603,926.59 as of September 11, 2023, for money expended to and for the benefit of Defendant Borrowers by Plaintiff at Defendant Borrowers' insistence and request.

33.     As of September 11, 2023, the total indebtedness that remains due, owing, and payable under the Loan Documents by Defendant Borrowers is $1,603,926.59, representing the total unpaid principal, interest, late charges, and other amounts due as provided in the Loan Documents, plus additional interest, late charges, and other amounts due as provided in the Loan Documents (including without limitation obligations relating to the reimbursement of attorneys' fees and costs incurred by Plaintiff), which amounts will continue to accrue until paid, according to the terms of the Loan Documents.

34.     Plaintiff has performed all its obligations, covenants, and conditions under the Loan Documents that Plaintiff agreed to perform, except for those obligations, covenants, and conditions excused by the acts or omissions of Defendants.

## THIRD CLAIM FOR RELIEF

### For Account Stated

### Plaintiff Against Defendant Borrowers

35.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 14, 16 through 30, and 32 through 34, inclusive, in this Complaint, which are incorporated herein by reference.

36.     Within the last year, an account was stated in writing by and between Plaintiff and Defendant Borrowers, wherein Defendant Borrowers agreed and acknowledged that Defendant Borrowers were indebted to Plaintiff in a sum of not less than $1,603,926.59.

37.     As of September 11, 2023, the total indebtedness that remains due, owing, and payable under the Loan Documents by Defendant Borrowers is $1,603,926.59, representing the total unpaid principal, interest, late charges, and other amounts due as provided in the Loan Documents, plus additional interest, late charges, and other amounts due as provided in the Loan Documents (including without limitation obligations relating to the reimbursement of attorneys' fees and costs incurred by Plaintiff), which amounts will continue to accrue until paid, according to the terms of the Loan Documents.

## FOURTH CLAIM FOR RELIEF

### For Recovery of Personal Property (Claim and Delivery)
### Plaintiff Against Defendant Borrowers

38.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 14, 16 through 30, 32 through 34, and 36 through 37, inclusive, in this Complaint, which are incorporated herein by reference.

39.     Under the terms of the Security Agreement, Defendant Borrowers granted Plaintiff a security interest in the HFC Financed Vehicles and other Collateral, which security interest in the HFC Financed Vehicles was duly perfected by virtue of the registration of HFC as a holder of interest ("lien holder") and the application for registration of HFC as a holder of interest ("lien holder") on the certificates of title of the HFC Financed Vehicles.

40.     Plaintiff is informed and believes, and based thereon alleges, that the HFC Financed Vehicles are now in the possession of Defendant Borrowers or customers of Defendant Borrowers. Under the terms of the Loan Documents,

Plaintiff is entitled to immediate possession of the HFC Financed Vehicles. Plaintiff hereby demands that Defendant Borrowers deliver possession of the HFC Financed Vehicles to Plaintiff.

41.     Plaintiff is informed and believes, and based thereon alleges, that the HFC Financed Vehicles, by their very nature, are in immediate risk of destruction, serious harm, concealment, transfer, or removal from wherever the HFC Financed Vehicles may be located at any given time.

## FIFTH CLAIM FOR RELIEF

### For Breach of Guaranty

### Plaintiff Against All Defendant Borrowers

42.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 14, 16 through 30, 32 through 34, 36 through 37, and 39 through 41, inclusive, in this Complaint, which are incorporated herein by reference.

43.     On or about October 6, 2022, Defendant Borrowers executed and delivered to Plaintiff a written Continuing Guaranty (the "Defendant Borrowers Guaranty"), a true copy of which is attached as **Exhibit "10"** and incorporates by reference.

44.     Pursuant to the terms of the Defendant Borrowers Guaranty, Defendant Borrowers agreed, among other terms, to unconditionally guaranty the full and punctual payment, performance, and satisfaction of the indebtedness of each of the other Defendant Borrowers under the Loan Documents and waive certain rights and protections.

45.     Plaintiff accepted the Defendant Borrowers Guaranty and in reliance thereon and the other Loan Documents, agreed to make and provide, and did make and provide, the loans and financing to Defendant Borrowers.

46.     Pursuant to the Defendant Borrowers Guaranty, each Defendant Borrower agreed to pay, separate and independent from such Borrower Defendant's

obligations under the Loan Agreement and other Loan Documents, an amount equal the total indebtedness and sum of amounts due, owing, and payable under the Loan Agreement and other Loan Documents.

47.     On July 10, 2023, Plaintiff served on Defendants the Notice of Default pursuant to which Plaintiff provided notice to Defendants of (a) the occurrence of the Existing Payment Defaults, (b) the acceleration of all obligations and amounts due under the Loan Documents, (b) the demand for immediate payment by Defendant Borrowers under the Loan Documents and Guaranties of all indebtedness and obligations owed to Plaintiff under the Loan Documents and Guaranties in full, and (c) the demand for the immediate delivery of possession to Plaintiff of the HFC Financed Vehicles. This Complaint also serves as further notice of (a) the occurrence of the Existing Payment Defaults, (b) the acceleration of all obligations and amounts due under the Loan Documents and Guaranties, (b) the demand for immediate payment by Defendant Borrowers under the Loan Documents and Guaranties of all indebtedness and obligations owed to Plaintiff under the Documents and Guaranties in full, and (c) the demand for the immediate delivery of possession to Plaintiff of the HFC Financed Vehicles.

48.     As of September 11, 2023, the total indebtedness that remains due, owing, and payable under the Loan Documents by Defendant Borrowers is $1,603,926.59, representing the total unpaid principal, interest, late charges, and other amounts due as provided in the Loan Documents, plus additional interest, late charges, and other amounts due as provided in the Loan Documents (including without limitation obligations relating to the reimbursement of attorneys' fees and costs incurred by Plaintiff), which amounts will continue to accrue until paid, according to the terms of the Loan Documents.

49.     The Defendant Borrowers Guaranty provides that Defendant Borrowers shall pay Plaintiff, in addition to other obligations provided therein, an amount equal to all expenses, costs, and attorneys' fees and other amounts incurred

by Plaintiff in connection with the enforcement of its rights and remedies under and in connection with the Defendant Borrowers Guaranty.  Plaintiff has employed the law firm of Buchalter, A Professional Corporation, for the purpose of instituting and prosecuting this action and enforcing its rights and remedies under the Loan Documents.

## SIXTH CLAIM FOR RELIEF

### For Breach of Guaranty

### Plaintiff Against Defendant Birnhack

50. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 14, 16 through 30, 32 through 34, 36 through 37, 39 through 41, 43 through 49, inclusive, in this Complaint, which are incorporated herein by reference.

51. On or about October 6, 2022, Defendant Birnhack executed and delivered to Plaintiff a written Continuing Guaranty (the "Defendant Birnhack Guaranty"), a true copy of which is attached as **Exhibit "11"** and incorporates by reference.

52. Pursuant to the terms of the Defendant Birnhack Guaranty, Defendant Birnhack agreed, among other terms, to unconditionally guaranty the full and punctual payment, performance, and satisfaction of the indebtedness of each of the other Defendant Birnhack under the Loan Documents and waive certain rights and protections.

53. Plaintiff accepted the Defendant Birnhack Guaranty and in reliance thereon and the other Loan Documents, agreed to make and provide, and did make and provide, the loans and financing to Defendant Birnhack.

54. Pursuant to the Defendant Birnhack Guaranty, Defendant Birnhack agreed to pay, as a separate and independent obligation from each Borrower Defendant's obligations under the Loan Agreement and other Loan Documents, an amount equal the total indebtedness and sum of amounts due, owing, and payable under the Loan Agreement and other Loan Documents.

55.     On July 10, 2023, Plaintiff served on Defendants the Notice of Default pursuant to which Plaintiff provided notice to Defendant Birnhack and the other Defendants of (a) the occurrence of the Existing Payment Defaults, (b) the acceleration of all obligations and amounts due under the Loan Documents, (b) the demand for immediate payment by Defendant Birnhack under the Loan Documents and Guaranties of all indebtedness and obligations owed to Plaintiff under the Loan Documents and Guaranties in full, and (c) the demand for the immediate delivery of possession to Plaintiff of the HFC Financed Vehicles. This Complaint also serves as further notice of (a) the occurrence of the Existing Payment Defaults, (b) the acceleration of all obligations and amounts due under the Loan Documents and Guaranties, (b) the demand for immediate payment by Defendant Birnhack under the Loan Documents and Guaranties of all indebtedness and obligations owed to Plaintiff under the Documents and Guaranties in full, and (c) the demand for the immediate delivery of possession to Plaintiff of the HFC Financed Vehicles.

56.     As of September 11, 2023, the total indebtedness that remains due, owing, and payable under the Defendant Birnhack by Defendant Birnhack is $1,603,926.59, representing the total unpaid principal, interest, late charges, and other amounts due as provided in the Loan Documents, plus additional interest, late charges, and other amounts due as provided in the Loan Documents (including without limitation obligations relating to the reimbursement of attorneys' fees and costs incurred by Plaintiff), which amounts will continue to accrue until paid, according to the terms of the Loan Documents.

57.     The Defendant Birnhack Guaranty provides that Defendant Birnhack shall pay Plaintiff, in addition to other obligations provided therein, an amount equal to all expenses, costs, and attorneys' fees and other amounts incurred by Plaintiff in connection with the enforcement of its rights and remedies under and in connection with the Defendant Birnhack Guaranty.  Plaintiff has employed the law firm of Buchalter, A Professional Corporation, for the purpose of instituting and

1  prosecuting this action and enforcing its rights and remedies under the Loan
2  Documents.

3  **PRAYER**

4      WHEREFORE, Plaintiff pray for judgment against all Defendants in this
5  action as follows:

6      On the First Claim for Relief against Defendant Borrowers, jointly and
7  severally:

8      1.    For the amount of not less than $1,603,926.59, together with additional
9  interest, late charges, and other amounts due as provided in the Loan Documents
10  according to proof at time of trial or entry of judgment;

11     2.    For reasonable attorneys' fees;

12     3.    For the immediate appointment of a receiver with all the usual and
13  customary powers of a receiver, including, without limitation, (X) locating and
14  assembling and taking possession of the HFC Financed Vehicles and other
15  Collateral, wherever located, in order to fully administer and protect such assets,
16  (Y) collecting the HFC Collateral Proceeds and forwarding HFC Collateral
17  Proceeds to Plaintiff, and (Z) taking all appropriate measures that are necessary to
18  protect the HFC Receivership Property.

19     4.    For a temporary restraining order and a preliminary and permanent
20  injunction restraining and enjoining Defendant Borrowers, and each of them, and
21  their agents, officers, directors, employees, and representatives, from, among other
22  things, engaging in, or performing, directly or indirectly, any or all of the following
23  acts:

24         (a)    Interfering, hindering, or molesting in any way whatsoever the
25  receiver in the performance of the receiver's duties and in the performance of any
26  duties incidental thereto;

27         (b)    Transferring, directly or indirectly, any interest by sale, or by
28  pledge, grant of security interest, assignment, invoice, or encumbrance in any

**COMPLAINT**

manner, any of the HFC Financed Vehicles or other Collateral, wherever located, and the HFC Collateral Proceeds;

(c)     Moving, destroying, deleting, or altering any of Defendant Borrowers' records (whether physical or electronic) as to the HFC Receivership Property, particularly the HFC Financed Vehicles;

(d)     Moving any of the HFC Financed Vehicles or other Collateral, including, without limitation, computers and computer components from any office or location of Defendant Borrowers;

(e)     Transferring, concealing, destroying, defacing, or altering any of the books and records of Defendant Borrowers (whether physical or electronic);

(f)     Demanding, collecting, receiving, or in any other way diverting or using any of the HFC Collateral Proceeds;

(g)     Causing any mail to be forwarded to any address other than the current business addresses of each Borrower, or otherwise interfering with or intercepting any mail intended for any Borrower Defendant;

(h)     Failing or refusing to immediately turn over to the receiver all of the HFC Receivership Property.

<u>On the Second and Third Claims for Relief against Defendant Borrowers, jointly and severally</u>:

5.     For the amount of not less than $1,603,926.59, together with additional interest, late charges, and other amounts due as provided in the Loan Documents according to proof at time of trial or entry of judgment;

<u>On the Fourth Claim for Relief against Defendants AEZ, ICR, JHRC, The Bar, WCR, and YTS, jointly and severally</u>:

6.     For judgment for possession of the HFC Financed Vehicles;

7.     For reasonable attorneys' fees;

///

///

1    On the Fifth Claim for Relief against Defendant Birnhack:

2        8.     For the amount of not less than $1,603,926.59, together with additional

3    interest, late charges, and other amounts due as provided in the Loan Documents

4    according to proof at time of trial or entry of judgment;

5        9.     For reasonable attorneys' fees;

6    On All Claims for Relief:

7        10.    For costs of suit herein incurred;

8        11.    For such other and further relief as the court may deem proper.

9

10   DATED: September 15, 2023        BUCHALTER
                          A Professional Corporation

11

12                             By:/s/ *Shir Davidovicz*
                               JEFFREY S. WRUBLE

13                                  WILLIAM S. BRODY
                               DAVID E. MARK

14                                  SHIR DAVIDOVICZ
                               Attorneys For Plaintiff,

15                                  HFC ACCEPTANCE, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# HFC ACCEPTANCE, LLC
## MASTER FLEET FINANCE AGREEMENT

THIS MASTER FLEET FINANCE AGREEMENT ("Agreement"), is made and entered into as of <u>October 6, 2022</u> is made by and between HFC ACCEPTANCE, LLC, a California limited liability company (hereinafter "Creditor") and <u>AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC</u> all New York Corporations (hereinafter "Debtor").

WHEREAS, Midway Auto Center, Creditor's affiliate, is licensed in the State of California as a motor vehicle dealer, and sells as a dealer certain passenger motor vehicles;

WHEREAS, Creditor provides financing to purchasers of passenger motor vehicles sold by Midway Auto Center, or by various other dealers and vehicle manufacturers;

WHEREAS, Debtor, for all purposes relevant to this Agreement, is in the business of owning and maintaining fleets of motor vehicles used primarily in connection with daily rental car businesses;

WHEREAS, Debtor desires to purchase from Midway Auto Center or from various other dealers and manufacturers, certain passenger motor vehicles, and to finance such purchase(s) by way of a loan or loans made by Creditor to Debtor; and

WHEREAS Creditor and Debtor desire to provide for terms and conditions of all such financing by means of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained herein, and for other good and valuable consideration, the parties agree as follows:

1.    <u>Variable Interest Rate</u>

All advances made by Creditor to Debtor shall bear an interest rate according to the following formula:

The interest rate applicable to this Agreement shall be fixed on a monthly basis and shall be the **GREATER OF:**

    a. A simple interest charge equal to the 30-Day LIBOR Rate as quoted on the last day of the preceding month by the British Bankers' Association, as the Inter-Bank Market Offered Rate per annum offered for U.S. dollar deposits on the London Inter-Bank Market, PLUS a margin of 5.75%;

           **OR**

    b. A simple interest charge equal to the rate of interest announced on the last day of the preceding month by the Federal Reserve Statistical Release H.15, as its "prime rate" for unsecured commercial loans, PLUS a margin of 2.5%.

**Under no circumstances shall the interest rate under this Agreement be less than Eight (8%) per annum (the "Floor Rate").** The Floor Rate may be amended, from time to time, by written amendment to be executed by the Debtor. Interest shall be computed daily based on a three hundred sixty (360) day year for the actual number of days elapsed.

                                          *IB*           _____ (Parties initials)

2.    <u>Payoff Upon Demand.</u>

1

Notwithstanding the repayment and other terms, established by Creditor for any advance, until such time as all of the balances of any and all loans, evidenced by this Agreement, have been paid to Creditor in full, Creditor may, at any time, declare the entire principal balance under this Agreement and all accrued and unpaid interest immediately due and payable, and Debtor shall immediately pay that amount.

3. <u>Term of Agreement</u>.

(a)      This Agreement shall become effective as of the date stated above and shall continue in full force and effect thereafter until terminated as provided herein.

(b)      Creditor may terminate this Agreement immediately with written notice to Debtor. Debtor may terminate this Agreement upon 30 days' prior written notice to Creditor setting forth the effective date of such termination. The termination of this Agreement shall not affect the obligations of the Debtor, and those of the Debtor's guarantor(s), to repay the balance of any outstanding loan(s), made prior to termination, and, as to any balance remaining unpaid, the terms and conditions of this Agreement shall continue to apply as if this Agreement had not been terminated.

4. <u>Scope of Agreement</u>.

Notwithstanding any other provision of this Agreement or of any other contract between the parties to the contrary, the provisions of this Agreement shall apply to all contracts and/or Orders (as that term is defined below) to be entered into between Creditor and Debtor during the term of this Agreement for the purchase and financing of motor vehicles which are the subject of this Agreement, unless the parties expressly agree by written modification to this Agreement, signed by the persons who executed this Agreement, or their respective successors or superiors, that the provisions of this Agreement shall not apply.

5. <u>Orders</u>.

(a)      The term "Order" means any written, electronic, or other communication reflecting Debtor's desire to obtain financing from Creditor. After the date of this Agreement, Debtor agrees to place Orders using the format supplied or approved in writing by Creditor. Creditor may, in its sole discretion, accept other forms of Orders. Creditor may assume that Orders transmitted via electronic mail are genuine if they ostensibly bear Debtor's electronic mail address.

(b)      Orders will be subject to acceptance and approval by Creditor. Creditor may accept or decline any Order, in whole or in part, in Creditor's sole discretion.

(c)      Orders may be accepted by written notice to Debtor, or by actual delivery of the motor vehicles ordered, to Debtor or to Debtor's agent. Except as otherwise provided in this Agreement, Orders shall not be cancelable after acceptance by Creditor. If accepted, any Order issued by any corporation or other business entity controlled by, controlling, or under common control with Debtor will be deemed for all purposes to be an Order submitted by Debtor hereunder and Debtor shall be bound by the terms thereof.

(d)      Debtor acknowledges the following notice has been made available to Debtor in the manner provided under California Vehicle Code section 11709.2: "NO COOLING-OFF PERIOD. California law does not provide for a 'cooling-off' or other cancellation period for vehicle lease or purchase contracts. Therefore, you cannot later cancel such a contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign a motor vehicle purchase or lease contract, it may only be canceled with the agreement of the Seller/Creditor or lessor or for legal cause, such as fraud."

<u>IB</u>       _____ (Parties initials)

2

(e)     In the event that Debtor is delinquent in payment of any indebtedness or obligation to Creditor (hereunder or otherwise), Creditor may, at Creditor's sole discretion, decline to provide financing for any additional pending Orders until such delinquency is cured. Any such suspension by Creditor shall not be construed as a termination or breach of this Agreement by Creditor.

(f)     Debtor understands and agrees that all orders are subject to the approval of Creditor, and that Debtor may be required to provide adequate security or comply with other credit and finance requirements before such approval will be granted. This paragraph does not limit Creditor's discretion under paragraph 5(b) to accept or reject Orders.

6.     Payments.

(a)     Debtor promises to pay to Creditor, timely, the amount of the indebtedness on such terms as shall be set forth in the Orders and in this Agreement. All such Orders shall be subject to the Creditor's right to declare all sums due and payable, at any time, as set forth in Paragraph 2 above. All payments shall be made to HFC ACCEPTANCE, LLC, and must be received at Creditor's principal place of business located at 4751 Wilshire Blvd., Suite 110, Los Angeles, CA 90010. Payments to persons not authorized by Creditor, in writing, to collect payments on Creditor's behalf, shall not relieve Debtor from the obligation to pay. Such a designation, if any, to a common carrier or otherwise, shall be for purposes of collecting funds only.

(b)     Payments of accrued but unpaid interest and principal shall be made on a monthly basis on or prior to the tenth (10th) day of each calendar month.

(c)     A late payment charge will be assessed monthly on any obligation not paid when due at a rate equal to five percent (5%) of the amount that is late; provided, however, that such late payment charge shall not be assessed at a rate which exceeds the maximum rate permitted by applicable law. In the event of Debtor's failure to make the payment by the date such payment becomes due, Debtor will also be liable to Creditor for any collection costs and expenses incurred by Creditor, including reasonable attorneys' fees and court costs and including, without limitation, post-judgment attorneys' fees.

7.     Security Interest

Debtor, to secure prompt and unconditional performance, including payment, to Creditor upon the terms and as and when due of any and all indebtedness, obligations or liabilities of Debtor to Creditor for the purchase of each motor vehicle, hereby grants, assigns and transfers to Creditor a continuing first and senior lien on and security interest in each such motor vehicle sold, all accessions and additions thereto, all service contracts or insurance policies held in connection therewith, and all proceeds and products thereof (including, without limitation, all lease agreements respecting same or chattel paper secured thereby), whether now owned or hereafter acquired (the "Collateral").

8.     Events of Default.

Each of the following shall constitute an event of default ("Event of Default") under this Agreement:

(a) Payment Default. Debtor fails to make payment when due under this Agreement.

(b) Other Defaults. Debtor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any related documents or to comply or to perform any term, obligation, covenant or condition contained in any other agreement between Creditor and Debtor.

_____     _____ (Parties initials)

3

(c) False Statements.  Any warranty, representation or statement made or furnished to Creditor by Debtor or on Debtor's behalf under this Agreement or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

(d) Death or Insolvency.  The dissolution or termination of Debtor's existence as a going business or the death of any partner, the insolvency of Debtor, the appointment of a receiver for any part of Debtor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Debtor.

(e) 3rd Party Creditor or Forfeiture Proceedings.  Commencement of foreclosure or forfeiture proceeding, self-help, repossession or any other method, by any creditor of Debtor or by any governmental agency against any collateral securing the loan(s). This includes a garnishment of any of Debtor's accounts.  However, this Event of Default shall not apply if there is a good faith dispute by Debtor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Debtor gives Creditor written notice of the creditor or forfeiture proceeding and deposits with Creditor monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Creditor, in its sole discretion, as being an adequate reserve or bond for the dispute.

(f) Events Affecting Guarantor.  Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Agreement.

(g) Change In Ownership.  The assignment of transfer of a twenty-five percent (25%) or more in Debtor to any third party.

(h) Adverse Change.  A material adverse change occurs in Debtor's financial condition, or Creditor believes the prospect of payment or performance of this Agreement is impaired.

(i) Cure Provisions.  If any default, other than a default in payment, is curable and if Debtor has not been given a notice of a breach of the same provision of this Agreement within the preceding three (3) months, it may be cured if Debtor, after receiving written notice from Creditor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Creditor deems in Creditor's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

9.     Creditor's Rights Upon Default.

(a)     In the event Debtor is in default of any of its obligations contained herein, Creditor may declare Debtor in default and may exercise the following rights and remedies, in addition to all other rights and remedies it may have as a secured party under the Uniform Commercial Code:

(i) To declare all Obligations or other obligations of any kind and nature of Debtor to Creditor immediately due and payable.

(ii) To require Debtor to assemble the Collateral and make it available to Creditor for possession at a place designated by Creditor which is reasonably convenient to both parties.

_____     _____ (Parties initials)

4

(iii) To take immediate and exclusive possession of the Collateral, or any part thereof, and for that purpose Creditor may, so far as Debtor can give authority therefor, with or without judicial process, enter upon any premises on which the Collateral may be situated and remove the same therefrom.

(iv) To retain the Collateral in satisfaction of the Obligations or, at Creditor's sole discretion, to hold, maintain, preserve and prepare the Collateral for public or private sale. The net proceeds realized upon any such disposition after deducting all expenses incurred by Creditor for the sale of the collateral or the like, and the actual attorneys' fees and legal expenses incurred by Creditor in enforcing its rights and claims hereunder and disposing of the Collateral, shall be applied in satisfaction of the Obligations secured hereby. Creditor will account to Debtor for any surplus realized on such disposition and Debtor shall remain liable for any deficiency.

(c)    Debtor grants to Creditor an irrevocable power of attorney to endorse all cash and non-cash proceeds of the Collateral to effect collection thereof.

(d)    Debtor shall not sell, assign, transfer, lease, resell, rent or otherwise dispose of any type of Collateral except in the ordinary course of Debtor's business of renting motor vehicles for payment. Debtor may not cause or permit the Collateral to be moved outside the continental United States until all outstanding indebtedness with respect to such Collateral has been paid in full.

(e)    Until such time as all outstanding balance of principal and accrued interest has been paid in full, Creditor shall have the right to file one or more financing statements pursuant to the California Uniform Commercial Code, in form suitable for filing to perfect a purchase money security interest in the Collateral and otherwise satisfactory to Creditor. Debtor irrevocably appoints Creditor, as its attorney- in -fact, to sign and file, in Debtor's name, a financing statement at any time with respect to the Collateral and the proceeds thereof, it being understood and intended by Debtor that such power of attorney is coupled with a security interest.

(f)    The remedies provided in this Section 9 shall be in addition to any other rights and remedies provided in this Agreement and applicable law.

10.    <u>Power of Attorney</u>.

For matters authorized by this Agreement or applicable law respecting vehicle title and insurance matters, Debtor appoints Creditor, or any employee, agent, or contractor of Creditor, which Creditor designates, as Debtor's attorney-in-fact with full power of substitution to sign in Debtor's name all documents respecting transfer of interests in the vehicles, including certificates of ownership, registration cards, applications, forms and/or any other documents required or necessary to transfer or convey any and all right, title in and to a vehicle to any person or persons and to perform all other necessary or incidental acts on Debtor's behalf. This power is irrevocable until all outstanding indebtedness has been fully satisfied.

11.    <u>Assignment, Transfer</u>.

Debtor shall not transfer, sell or assign, or attempt to transfer, sell or assign, this Agreement or sell or transfer or delegate any duty, or obligation or responsibility of Debtor under this Agreement. Subject to the foregoing, this Agreement shall be binding on the successors and assigns of the parties.

_____    (Parties initials)

12.    <u>Choice of Law; Attorney Fees; Jurisdiction and Venue</u>.

5

This Agreement shall be governed by, and construed in accordance with, the laws of the State of California. In the event any legal action is necessary to enforce any provision of this Agreement, the unsuccessful party shall pay to the prevailing party reasonable attorney's fees and costs. The parties further agree that in the event any legal proceeding is initiated to enforce the terms of this Agreement or rights arising hereunder, any such suit may be filed in the County of Los Angeles, State of California; and Debtor and Creditor specifically agree to submit to the jurisdiction of the California Courts, specifically waive any objections they have or may have as to personal jurisdiction in California, and agree to be bound by any final decision or judgment rendered therein.

13.    Arbitration of Disputes and Waiver of Jury Trial.

Any disputes arising between Creditor and Debtor regarding this agreement, the personal guarantee or any purchase order financed under this agreement fees charged or shall be resolved by binding arbitration. Such arbitration shall be conducted in accordance with the rules of the American Arbitration Association or JAMS/Endispute. The arbitrator shall be empowered to order the losing party in the arbitration to reimburse the prevailing party for all expenses incurred in connection with the arbitration, including without limitation the arbitrator's fees and reasonable attorney fees and costs. It is further understood that:

- The parties are waiving their right to a jury trial and to seek remedies available in court proceedings;

- Pre-arbitration discovery is generally more limited than and different from court proceedings;

- The arbitrator's award is not required to include factual findings or legal reasoning; and

- Any party's right to appeal or to seek modification of the award is strictly limited and the award shall be final and binding upon the parties.

14.    Irreparable Injury.

Any material violation of the provisions of this Agreement respecting payment of invoices can result in irreparable injury to Creditor. Creditor shall be entitled to applicable pre-trial remedies before a court of competent jurisdiction, including, but not limited to, writs of possession, writs of attachment, temporary restraining orders, and preliminary injunctions.

15.    Severability.

If any provision contained herein contravenes or is prohibited by laws which are held to be applicable to this Agreement, such provision shall be limited to the extent necessary so that it will not render this Agreement invalid, unlawful or unenforceable, in whole or in part, under such laws, but all other provisions of this Agreement shall remain in full force and effect.

16.    Integrated Agreement; Modifications.

This Agreement terminates and supersedes all prior written or oral agreements, if any, between Creditor and Debtor relating to the subject matter hereof, and is the final and complete agreement and understanding of the parties as to its subject matter. This Agreement may be supplemented, amended, or modified only by a written instrument referring to this Agreement, and signed by the authorized officers of each of the parties. No representative of Creditor shall have authority to waive any of the provisions of this Agreement or to make any amendment or modification of or any other change in, addition to, or deletion of any portion of this Agreement or to make any other agreement which imposes any obligation on either Creditor or Debtor which is not specifically imposed by this Agreement, unless such waiver, amendment, modification, change, addition, deletion, or agreement is in writing and signed by Debtor and two duly authorized officers of Creditor.

_IB_        _____ (Parties initials)

17.    Nonwaiver.

6

Except as otherwise provided in this Agreement, the failure of either party at any time to require performance by the other party of any provision hereof shall in no way affect the full right to require such performance at any time thereafter, nor shall the waiver by either party of a breach of any provision hereof constitute a waiver of any succeeding breach of the same or any other provision or constitute a waiver of the provision itself.

18.   Notices.

Except as otherwise specified in this Agreement, all notices or other communications hereunder shall be in writing and deemed to have been duly given when (a) delivered in person or (b) when transmitted via facsimile, provided that a duplicate copy of said transmission is mailed to the address(es) set forth below and further provided that the notifying party maintains a record of such facsimile transmission, or (c) two (2) days following their deposit in the U.S. mail, first-class postage prepaid, and addressed as follows:

**To Debtor:**

AEZ Rent A Car, LLC
5314 16th Ave Suite 202
Brooklyn, NY 11204
Phone: 347-409-8300

**To Creditor:**

HFC ACCEPTANCE, LLC
Attention: Jeff Brodsky
4751 Wilshire Blvd., Suite 110
Los Angeles, California. 90010


The parties further agree that service of any summons and complaint of any legal action initiated to enforce any of the rights and obligations created by the agreement herein, may be effectuated by U.S. mail, return receipt requested, to the parties at the above addresses. It is the obligation of both parties to this Agreement to advise the other of any changes to the addresses at which the party may receive legal notices, and failure to do so will not invalidate any notice or service of summons made at the above addresses.

19.   Time of the Essence.

Time is of the essence as it relates to the parties' respective obligations and performance under the terms of this Agreement.

20.   Independent Relationship of Parties.

The parties stand in the relation of arms-length contracting parties, there being no relation, or anticipated relation of joint venture, partnership, agency, dealership, franchise, intellectual property licensee, or otherwise. Debtor and Creditor do hereby acknowledge and agree that they have had the opportunity to be represented by independent counsel of their own choice throughout all negotiations which preceded the execution of this Agreement, and that they have executed this Agreement with the consent and upon the advice of said independent counsel. Accordingly, it is agreed that any legal rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to the interpretation of this Agreement or any addendum, amendment, or exhibits.

21. Remedies.

The remedies provided under this Agreement are cumulative, and are in addition to any remedies provided by law or equity. No course of dealing between Debtor and Creditor, or any delay or failure on the part of Creditor in exercising any rights under this Agreement shall operate as a waiver of any rights of the Creditor.

JB          _____ (Parties initials)

7

22.    Incentive Payments, Manufacture Rebates and Hold Backs.

Debtor acknowledges and agrees that all manufacturers' incentive payments, rebates, hold-backs and other payments ("Incentives") made to a purchaser of any vehicle which is financed under this Agreement must be in writing, evidencing credits to the Debtor in the purchase order. In the event of a failure to state the payee for any such Incentives, the payee shall be deemed to be Midway Auto Center and no credit on this account shall be given to the Debtor in this event.

23.    Inspection, Insurance and Audits.

Creditor has the right to inspect all Collateral at any time during the term of this Agreement. Debtor shall, upon Creditor's request, provide to Creditor fleet, rental information, and insurance information regarding the status, condition and location of all vehicles financed by Creditor. Further, Debtor shall furnish Creditor with all insurance policies, bonds, DMV Assignment of Deposit and a copy of the Notice of Assignment and Direction to Pay Earnings, and other evidence of liability and physical damage coverage on the Collateral in the event of loss. All policies protecting the Collateral must name Creditor as "Loss Payee" in the event of damage or destruction of said Collateral. In the event that an audit of the Collateral reveals that any vehicle financed under this Agreement is missing, damaged or destroyed, Debtor shall, within five (5) days following receipt of written demand from Creditor, pay the entire balance due on said Collateral to Creditor.

24.    Authority to Sign

Each party warrants to the other that the individual whose signature appears below has the authority to sign this Agreement on behalf of their respective party.

25.    Loss Reserve: $100 per unit finance.
26.    Advance: 90% Manufacturers Invoice

**THIS FINANCING AGREEMENT HAS BEEN EXECUTED IN A COMMERCIAL SETTING BY PARITES WITH EQUAL BARGAINING POWER AS PART OF A BUSINESS/COMMERICAL LENDING TRANSACTION BY AND BETWEEN CREDITOR AND DEBTOR. PLEASE READ CAREFULLY PRIOR TO EXECUTION. YOUR SIGNATURE TO THIS DOCUMENT IS EVIDENCE THAT YOU HAVE READ IT, UNDERSTAND IT, AND FREELY AND COMPLETELY AGREE TO ITS TERMS.**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

**DEBTOR:**                                    **CREDITOR:**

AEZ Rent A Car LLC                          HFC ACCEPTANCE, LLC
ICR Group, LLC
JHRC Corp
The Bar, LLC
WCR Group, LLC
YTS Group, LLC

By _____                        By _____
Signature – Yitzchok, M Birnhack              Jeff Brodsky, President

MIRIAM MINAYA
Notary Public, State of New York
Reg. No. 01MI6371812
Qualified in Richmond County
Commission Expires 03/05/2026

10/18/22

8

# EXHIBIT 2

# COMMERCIAL SECURITY AGREEMENT

| Dealer Names | AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC |
|---|---|
| Date | 10-06-22 |
| Credit Limit | $2,000,000 |

BORROWERS / GRANTORS:
AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC
5314 16th Ave Suite 202
Brooklyn, NY 11204

LENDER:
HFC ACCEPTANCE, LLC
4751 Wilshire Blvd., Suite 110
Los Angeles, Ca 90010

THIS COMMERCIAL SECURITY AGREEMENT is entered into between AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC (referred to below as "Grantor/s"); and HFC ACCEPTANCE, LLC (referred to below as "Lender"). For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement. Terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

> **Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

> **Collateral.** The word "Collateral" means the following described property of Grantor, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

> All inventory, accounts, contract rights, equipment and general intangibles.

In addition, the word "Collateral" includes all of the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(a)     All attachments, accessions, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described above.

(b)     All products and produce of any property described in this Collateral section.

(c)     All accounts, contract rights, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.

(d)     All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.

(e)     All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**Event of Default.** The words "Event of Default" mean and include and of the Events of Default set forth below in the section titled "EVENTS OF DEFAULT."

**Grantor.** The word "Grantor" AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC and its successors and assigns.

**Guarantor.** The word "Guarantor" means and includes without limitation, each and all of the guarantors, (Yitzchok, M Birnhack, AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC) sureties, and accommodation parties in connection with any Indebtedness.

**Indebtedness.** The word "Indebtedness" means the Indebtedness evidenced by the Note, including all principal and interest, together with all other Indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means HFC ACCEPTANCE, LLC, its successors and assigns.

**Note.** The word "Note" means the note or credit agreement established October 6, 2022 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancing of, consolidations of and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**OBLIGATIONS OF GRANTOR.** Grantor warrants and covenants to Lender as follows:

**Perfection of Security Interest.** Grantor agrees to execute such financing statements and to take whatever other actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper if not delivered to Lender for possession by Lender. Grantor hereby appoints Lender as its irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect or to continue the security interest granted in this Agreement. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral. Grantor promptly will notify Lender before any change in Grantor's name including any change to the assumed business names of Grantor. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation or organization and bylaws or operating agreement do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, contract rights, chattel paper, or general intangibles, the Collateral is enforceable in accordance with its terms, is genuine, and complies with applicable laws concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide

Indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or therefore shipped or delivered pursuant to a contract of sale, or for services theretofore performed by Grantor with or for the account debtor; there shall be no setoffs or counterclaims against any such account; and no agreement under which any deductions or discounts may be claimed shall have been made with the account debtor except those disclosed to Lender in writing.

**Location of the Collateral.** Grantor, upon request of Lender, will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (a) all real property owned or being purchased by Grantor; (b) all real property being rented or leased by Grantor; (c) all storage facilities owned, rented, leased, or being used by Grantor; and (d) all other properties where Collateral is or may be located. Except in the ordinary course of its business, Grantor shall not remove the Collateral from its existing locations without the prior written consent of Lender.

**Removal of Collateral.** Grantor shall keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts, the records concerning the Collateral) at Grantor's address shown above, or at such other locations as are acceptable to Lender. Except in the ordinary course of its business, including the sales of inventory, Grantor shall not remove the Collateral from its existing locations without the prior written consent of Lender. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of California, without the prior written consent of Lender.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interest granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.**  Grantor represents and warrants to Lender that it holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement.  No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Collateral Schedules and Locations.**  As often as Lender shall require, and insofar as the Collateral consists of accounts and general intangibles, Grantor shall deliver to Lender schedules of such Collateral, including such information as Lender may require, including without limitation names and addresses of account debtors and agings of accounts and general intangibles. Insofar as the Collateral consists of inventory and equipment, Grantor shall deliver to Lender, as often as Lender shall require, such lists descriptions, and designations of such Collateral as Lender may require to identify the nature, extent, and location of such Collateral. Such information shall be submitted for Grantor and each of its subsidiaries or related companies.

**Maintenance and Inspection of Collateral.**  Grantor shall maintain all tangible Collateral in good condition and repair.  Grantor will not commit or permit damage to or destruction of the Collateral or any part of the Collateral.  Lender and its designated representatives and agents shall have the right at all reasonable times to examine, inspect, and audit the Collateral wherever located.  Grantor shall immediately notify Lender of all cases involving the return, rejection, repossession, loss or damage of or to any Collateral; of any request for credit or adjustment or of any other dispute arising with respect to the Collateral; and generally of all happenings and events affecting the Collateral or the value or the amount of the Collateral.

**Taxes, Assessments and Liens.**  Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents.  Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion.  If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond, or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorney's fees or other charges that could accrue as a result of foreclosure or sale of the Collateral.  In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral.  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

5

**Compliance With Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances and regulations of all governmental authorities applicable to the production, disposition, or use of the Collateral. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that, except in the ordinary and customary use of collateral in connection with operation of rental business, the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used for generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for hazardous wastes and substances. Grantor hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be canceled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this

Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if it chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral. Lender may make proof of loss if Grantor fails to do so fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Upon default of Grantor which is not cured within 15 days of written notice Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured; (e) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (f) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS** Upon default of Grantor which is not cured within 15 days of written notice and except otherwise provided below with respect to accounts, Grantor may have possession of the

tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Collateral.

**EXPENDITURES BY LENDER.** If not discharged or paid when due, Lender may (but shall not be obligated to) discharge or pay any amounts required to be discharged or paid by Grantor under this Agreement, including without limitation all taxes, liens, security interests, encumbrances, and other claims, at any time levied or placed on the Collateral. Lender also may (but shall not be obligated to) pay all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses shall become a part of the Indebtedness and, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and to be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of an Event of Default.

**EVENTS OF DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

> **Default on Indebtedness.** Failure of Grantor to make any payment when due on the Indebtedness.

> **Other Defaults.** Failure of Grantor to comply with or perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or in any other agreement between Lender and Grantor.

> **False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Grantor under this Agreement is false or misleading in any material respect, either now or at the time made or furnished.

8

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Collateral or any other collateral securing the Indebtedness. This includes a garnishment of any of Grantor's deposit accounts with Lender.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor dies or becomes incompetent.

**Insecurity.** Lender, in good faith, deems itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon default of Grantor which is not cured within 15 days of written notice, at any time thereafter, Lender shall have all the rights of a secured party under the California Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and to make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the **Collateral.** If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in its own name or that of

9

Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor reasonable notice of the time after which any private sale or any other intended disposition of the Collateral is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days, or such lesser time as required by state law, before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** To the extent permitted by applicable law, Lender shall have the following rights and remedies regarding the appointment of a receiver: (a) Lender may have a receiver appointed as a matter of right, (b) the receiver may be an employee of Lender and may serve without bond, and (c) all fees of the receiver and his or her attorney shall become part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in its discretion transfer any Collateral into its own name or that of its nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

10

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any and all other rights and remedies it may have available at law, in equity, or otherwise.

**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or the Related Documents or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law and Venue.** This Agreement has been delivered to Lender and accepted by Lender in the State of California. In the event of a lawsuit, Grantor agrees to submit to the jurisdiction of the courts of Los Angeles County, State of California. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

**Attorney's Fees and Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including attorney's fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorney's fees and legal expenses whether or not there is a lawsuit, including attorney's fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Notices.** All notices required to be given under this Agreement shall be given in writing and shall be effective when actually delivered or when deposited with a

11

nationally recognized overnight courier or deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Grantor, notice to any Grantor will constitute notice to all Grantors. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address(es).

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (a) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (b) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral and, in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Preference Payments.** Any monies Lender pays because of an asserted preference claim in Borrower's bankruptcy will become a part of the Indebtedness and, at Lender's option, shall be payable by Borrower as provided in the "EXPENDITURES BY LENDER" paragraph.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**Successor Interests.** Subject to the limitations set forth above on transfer of the Collateral, this Agreement shall be binding upon and insure to the benefit of the parties, their successors and assigns.

**Waiver.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this

Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent in subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Waiver of Co-Obligor's Rights.** If more than one person is obligated for the Indebtedness, Borrower irrevocably waives, disclaims and relinquishes all claims against such other person which Borrower has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution and exoneration.

## GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT, AND GRANTOR AGREES TO ITS TERMS. THIS AGREEMENT IS DATED ___10-06-22___

GRANTOR:
AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC

By:_____
       (Owner/Member) Yitzchok, M Birnhack

MIRIAM MINAYA
Notary Public, State of New York
Reg. No. 01MI6371812
Qualified in Richmond County
Commission Expires 03/05/2026

10/19/22

HFC ACCEPTANCE, LLC

By:_____
Jeff Brodsky,     President

CORPORATE GUARANTORS:

AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC

By:_____
       (Owner/Member) Yitzchok, M Birnhack

MIRIAM MINAYA
Notary Public, State of New York
Reg. No. 01MI6371812
Qualified in Richmond County
Commission Expires 03/05/2026

10/19/2022

# EXHIBIT 3



STATE OF NEW YORK
DEPARTMENT OF STATE
ONE COMMERCE PLAZA, 99 WASHINGTON AVENUE
ALBANY, NY 12231-0001

KATHY HOCHUL
GOVERNOR

ROBERT J. RODRIGUEZ
SECRETARY OF STATE

## FILING ACKNOWLEDGMENT
October 25, 2022

## RETURN TO CUSTOMER SERVICE COUNTER

CORPORATION SERVICE COMPANY
80 STATE STREET, 6TH FLOOR
ALBANY NY 12207-0000

Attached is the acknowledgment copy of your recently submitted filing. This filing consists of a total of 2 pages; however, only the first page of the filed document is returned as part of this acknowledgment. This document has been filed with the New York State Department of State, Uniform Commercial Code Division.

The Financing Statement has been assigned Filing Number: 202210210443859, Filing Date: 10/21/2022 and is currently reflected in our automated database as follows:

### *Debtor's Name & Address*

AEZ RENT A CAR LLC
5314 16TH AVENUE SUITE 202
BROOKLYN NY 11204

### *Secured Party's Name & Address*

HFC ACCEPTANCE, LLC
4751 WILSHIRE BLVD
LOS ANGELES CA 90010

This filing will lapse on 10/21/2027, unless continued. We encourage filers to take full advantage of the six-month window of opportunity in which to file a Financing Statement Amendment (Continuation). Submission of your documents at the onset of the six-month window will allow ample time to rectify potential filing errors and help to assure timely recording of your filing.

If you have any concerns regarding the way this document is recorded, please contact one of our Customer Service Representatives at (518) 473-2492, or respond in writing to the UCC Data Processing Unit at the address indicated above.

Sincerely,

Uniform Commercial Code Division
Data Processing Unit

REF #: 218830

*218830*

2022 OCT 21 PM 4:30

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
CSC   1-800-858-5294

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

2421 96091

CSC 50 DRAWDOWN

Filed In: New York   (S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | AEZ RENT A CAR LLC | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS 5314 16th avenue suite 202 | CITY BROOKLYN | STATE NY | POSTAL CODE 11204 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any ☒ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | HFC Acceptance, LLC | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS 4751 Wilshire Blvd | CITY Los Angeles | STATE CA | POSTAL CODE 90010 | COUNTRY USA |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

See attached "Schedule A"

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

2421 96091

# EXHIBIT 4



STATE OF NEW YORK
DEPARTMENT OF STATE
ONE COMMERCE PLAZA, 99 WASHINGTON AVENUE
ALBANY, NY 12231-0001

KATHY HOCHUL
GOVERNOR

ROBERT J. RODRIGUEZ
SECRETARY OF STATE

## FILING ACKNOWLEDGMENT
October 25, 2022

## RETURN TO CUSTOMER SERVICE COUNTER

CORPORATION SERVICE COMPANY
80 STATE STREET, 6TH FLOOR
ALBANY NY 12207-0000

Attached is the acknowledgment copy of your recently submitted filing. This filing consists of a total of 2 pages; however, only the first page of the filed document is returned as part of this acknowledgment. This document has been filed with the New York State Department of State, Uniform Commercial Code Division.

The Financing Statement has been assigned Filing Number: 202210210443811, Filing Date: 10/21/2022 and is currently reflected in our automated database as follows:

### *Debtor's Name & Address*

ICR GROUP LLC
199 LEE AVENUE, SUITE 675
BROOKLYN NY 11211

### *Secured Party's Name & Address*

HFC ACCEPTANCE, LLC
4751 WILSHIRE BLVD
LOS ANGELES CA 90010

This filing will lapse on 10/21/2027, unless continued. We encourage filers to take full advantage of the six-month window of opportunity in which to file a Financing Statement Amendment (Continuation). Submission of your documents at the onset of the six-month window will allow ample time to rectify potential filing errors and help to assure timely recording of your filing.

If you have any concerns regarding the way this document is recorded, please contact one of our Customer Service Representatives at (518) 473-2492, or respond in writing to the UCC Data Processing Unit at the address indicated above.

Sincerely,

Uniform Commercial Code Division
Data Processing Unit

REF #: 218828

218828

2022 OCT 21 PM 4:30

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
CSC    1-800-858-5294

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

2421 99563

CSC 50 DRAWDOWN

Filed In: New York   (S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | ICR Group LLC | | | |
|---|---|---|---|---|

OR
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS 199 Lee Avenue, Suite 675 | CITY BROOKLYN | STATE NY | POSTAL CODE 11211 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any 4236835 | ☐ NONE |
|---|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | HFC Acceptance, LLC | | | |
|---|---|---|---|---|

OR
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS 4751 Wilshire Blvd | CITY Los Angeles | STATE CA | POSTAL CODE 90010 | COUNTRY USA |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

See attached "Schedule A"

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

2421 99563

## FILING NUMBER: 20221021044381l

# EXHIBIT 5



STATE OF NEW YORK
DEPARTMENT OF STATE
ONE COMMERCE PLAZA, 99 WASHINGTON AVENUE
ALBANY, NY 12231-0001

KATHY HOCHUL
GOVERNOR

ROBERT J. RODRIGUEZ
SECRETARY OF STATE

## FILING ACKNOWLEDGMENT
October 25, 2022

## RETURN TO CUSTOMER SERVICE COUNTER

CORPORATION SERVICE COMPANY
80 STATE STREET, 6TH FLOOR
ALBANY NY 12207-0000

Attached is the acknowledgment copy of your recently submitted filing. This filing consists of a total of 2 pages; however, only the first page of the filed document is returned as part of this acknowledgment. This document has been filed with the New York State Department of State, Uniform Commercial Code Division.

The Financing Statement has been assigned Filing Number: 202210210443772, Filing Date: 10/21/2022 and is currently reflected in our automated database as follows:

### Debtor's Name & Address

JHRC CORP
5314 16TH AVE, SUITE 202
BROOKLYN NY 11204

### Secured Party's Name & Address

HFC ACCEPTANCE, LLC
4751 WILSHIRE BLVD
LOS ANGELES CA 90010

This filing will lapse on 10/21/2027, unless continued. We encourage filers to take full advantage of the six-month window of opportunity in which to file a Financing Statement Amendment (Continuation). Submission of your documents at the onset of the six-month window will allow ample time to rectify potential filing errors and help to assure timely recording of your filing.

If you have any concerns regarding the way this document is recorded, please contact one of our Customer Service Representatives at (518) 473-2492, or respond in writing to the UCC Data Processing Unit at the address indicated above.

Sincerely,

Uniform Commercial Code Division
Data Processing Unit

REF #: 218826

~218826

2022 OCT 21  PM 4:30

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
CSC    1-800-858-5294

**B. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2422 00886

CSC 50 DRAWDOWN

Filed In: New York  (S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | JHRC CORP | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS 5314 16TH AVE, SUITE 202 | CITY BROOKLYN | STATE NY | POSTAL CODE 11204 | COUNTRY USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any | ☒ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | HFC Acceptance, LLC | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS 4751 Wilshire Blvd | CITY Los Angeles | STATE CA | POSTAL CODE 90010 | COUNTRY USA |

**4. This FINANCING STATEMENT covers the following collateral:**

See attached "Schedule A"

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA**

2422 00886

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## FILING NUMBER: 202210210443772

# EXHIBIT 6



STATE OF NEW YORK
DEPARTMENT OF STATE
ONE COMMERCE PLAZA, 99 WASHINGTON AVENUE
ALBANY, NY 12231-0001

KATHY HOCHUL
GOVERNOR

ROBERT J. RODRIGUEZ
SECRETARY OF STATE

## FILING ACKNOWLEDGMENT
October 26, 2022

## RETURN TO CUSTOMER SERVICE COUNTER

CORPORATION SERVICE COMPANY
80 STATE STREET, 6TH FLOOR
ALBANY NY 12207-0000

Attached is the acknowledgment copy of your recently submitted filing. This filing consists of a total of 2 pages; however, only the first page of the filed document is returned as part of this acknowledgment. This document has been filed with the New York State Department of State, Uniform Commercial Code Division.

The Financing Statement has been assigned Filing Number: 202210240448425, Filing Date: 10/24/2022 and is currently reflected in our automated database as follows:

### *Debtor's Name & Address*

THE BAR LLC
199 LEE AVENUE, SUITE 675
BROOKLYN NY 11211

### *Secured Party's Name & Address*

HFC ACCEPTANCE, LLC
4751 WILSHIRE BLVD
LOS ANGELES CA 90010

This filing will lapse on 10/24/2027, unless continued. We encourage filers to take full advantage of the six-month window of opportunity in which to file a Financing Statement Amendment (Continuation). Submission of your documents at the onset of the six-month window will allow ample time to rectify potential filing errors and help to assure timely recording of your filing.

If you have any concerns regarding the way this document is recorded, please contact one of our Customer Service Representatives at (518) 473-2492, or respond in writing to the UCC Data Processing Unit at the address indicated above.

Sincerely,

Uniform Commercial Code Division
Data Processing Unit

REF #: 218911

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

218911

2022 OCT 24  PM 4: 30

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
   CSC   1-800-858-5294

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

⌐ 2423 49837

   CSC 50 DRAWDOWN

∟                                    Filed In: New York  (S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | The Bar LLC | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS  199 Lee Avenue, Suite 675 | | CITY Brooklyn | STATE NY  POSTAL CODE 11211 | COUNTRY USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any 4094309 ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE  POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | HFC Acceptance, LLC | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS  4751 Wilshire Blvd | | CITY Los Angeles | STATE CA  POSTAL CODE 90010 | COUNTRY USA |

**4. This FINANCING STATEMENT covers the following collateral:**
   See attached "Schedule A"

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum | | | [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional] | ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2 | |

**8. OPTIONAL FILER REFERENCE DATA**

2423 49837

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**FILING NUMBER: 202210240448425**

# EXHIBIT 7



STATE OF NEW YORK
DEPARTMENT OF STATE
ONE COMMERCE PLAZA, 99 WASHINGTON AVENUE
ALBANY, NY 12231-0001

KATHY HOCHUL
GOVERNOR

ROBERT J. RODRIGUEZ
SECRETARY OF STATE

**FILING ACKNOWLEDGMENT**
October 25, 2022

## RETURN TO CUSTOMER SERVICE COUNTER

CORPORATION SERVICE COMPANY
80 STATE STREET, 6TH FLOOR
ALBANY NY 12207-0000

Attached is the acknowledgment copy of your recently submitted filing. This filing consists of a total of 2 pages; however, only the first page of the filed document is returned as part of this acknowledgment. This document has been filed with the New York State Department of State, Uniform Commercial Code Division.

The Financing Statement has been assigned Filing Number: 202210210443847, Filing Date: 10/21/2022 and is currently reflected in our automated database as follows:

### *Debtor's Name & Address*

WCR GROUP, LLC
199 LEE AVE. SUITE 675
BROOKLYN NY 11211

### *Secured Party's Name & Address*

HFC ACCEPTANCE, LLC
4751 WILSHIRE BLVD
LOS ANGELES CA 90010

This filing will lapse on 10/21/2027, unless continued. We encourage filers to take full advantage of the six-month window of opportunity in which to file a Financing Statement Amendment (Continuation). Submission of your documents at the onset of the six-month window will allow ample time to rectify potential filing errors and help to assure timely recording of your filing.

If you have any concerns regarding the way this document is recorded, please contact one of our Customer Service Representatives at (518) 473-2492, or respond in writing to the UCC Data Processing Unit at the address indicated above.

Sincerely,

Uniform Commercial Code Division
Data Processing Unit

REF #: 218829

218829

2022 OCT 21  PM 4:30

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
CSC   1-800-858-5294

**B. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2421 96469

CSC 50 DRAWDOWN

Filed In: New York  (S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | WCR GROUP, LLC | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS 199 LEE AVE. SUITE 675 | CITY BROOKLYN | STATE NY | POSTAL CODE 11211 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any  ☒ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  ☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | HFC Acceptance, LLC | | | |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS 4751 Wilshire Blvd | CITY Los Angeles | STATE CA | POSTAL CODE 90010 | COUNTRY USA |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

See attached "Schedule A"

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | All Debtors ☐ Debtor 1 ☐ Debtor 2 | |

**8. OPTIONAL FILER REFERENCE DATA**

2421 96469

FILING OFFICE COPY — UCC FINANCING STATEMENT ~~~~~ ~~~~~~~~

## FILING NUMBER: 202210210443847

# EXHIBIT 8



STATE OF NEW YORK
DEPARTMENT OF STATE
ONE COMMERCE PLAZA, 99 WASHINGTON AVENUE
ALBANY, NY 12231-0001

KATHY HOCHUL
GOVERNOR

ROBERT J. RODRIGUEZ
SECRETARY OF STATE

## FILING ACKNOWLEDGMENT
October 25, 2022

## RETURN TO CUSTOMER SERVICE COUNTER

CORPORATION SERVICE COMPANY
80 STATE STREET, 6TH FLOOR
ALBANY NY 12207-0000

Attached is the acknowledgment copy of your recently submitted filing. This filing consists of a total of 2 pages; however, only the first page of the filed document is returned as part of this acknowledgment. This document has been filed with the New York State Department of State, Uniform Commercial Code Division.

The Financing Statement has been assigned Filing Number: 202210210443796, Filing Date: 10/21/2022 and is currently reflected in our automated database as follows:

### Debtor's Name & Address

YTS GROUP LLC
199 LEE AVENUE, SUITE 675
BROOKLYN NY 11211

### Secured Party's Name & Address

HFC ACCEPTANCE, LLC
4751 WILSHIRE BLVD
LOS ANGELES CA 90010

This filing will lapse on 10/21/2027, unless continued. We encourage filers to take full advantage of the six-month window of opportunity in which to file a Financing Statement Amendment (Continuation). Submission of your documents at the onset of the six-month window will allow ample time to rectify potential filing errors and help to assure timely recording of your filing.

If you have any concerns regarding the way this document is recorded, please contact one of our Customer Service Representatives at (518) 473-2492, or respond in writing to the UCC Data Processing Unit at the address indicated above.

Sincerely,

Uniform Commercial Code Division
Data Processing Unit

REF #: 218827

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

218827

2022 OCT 21  PM 4: 30

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
CSC   1-800-858-5294

**B. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2422 00340

CSC 50 DRAWDOWN

Filed In: New York  (S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME  **YTS Group LLC**

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS  199 Lee Avenue, Suite 675 | CITY  BROOKLYN | STATE  NY | POSTAL CODE  11211 | COUNTRY  USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  LLC | 1f. JURISDICTION OF ORGANIZATION  NY | 1g. ORGANIZATIONAL ID #, if any  4422221  ☐ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  ☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME  **HFC Acceptance, LLC**

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS  4751 Wilshire Blvd | CITY  Los Angeles | STATE  CA | POSTAL CODE  90010 | COUNTRY  USA |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

See attached "Schedule A"

**5. ALTERNATIVE DESIGNATION [if applicable]:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

**6.** This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum  **7. Check to REQUEST SEARCH REPORT(S)** on Debtor(s) [ADDITIONAL FEE] [optional]  ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

2422 00340

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**FILING NUMBER: 202210210443796**

# EXHIBIT 9



4751 Wilshire Blvd. #110, Los Angeles, CA 90010 | Phone 323-692-7083 jbrodsky@hfcacceptance.com

July 10, 2023

Yitzchok M Birnhack
AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC

5314 16th Ave Suite 202 Brooklyn, NY 11204
199 Lee Avenue, Suite 675. Brooklyn, NY 11211
412 Avenue J, Brooklyn, NY 11230-3329
4919 20th Ave. Brooklyn NY 11204
547 Park Ave. Brooklyn NY 11205
268 West  RTE 59. Spring Valley NY 10977
202 Main St. NJ 08701
386 NY-17M Monroe. NY 10950
8901 4th Ave. Brooklyn NY. 11209

Re:     $2 Million Credit Facility HFC Acceptance, LLC

**NOTICE OF DEFAULT**

Dear Mr. Birnhack,

In connection with the (a) Master Finance Agreement, Commercial Security Agreement and Personal Guarantees (the "Debtor") in favor of HFC Acceptance, LLC (the "Creditor"), dated October 6th, 2022, please be advised that the Credit Facility is in default for breach of Section 8 (a) of the Master Finance Agreement and Section (1) of the Personal and Continuing Guarantee. Additional payment default exists under the terms of Commercial Security Agreement.

Please be advised that, as of July 10, 2023 the account is past due amount for a total of $155,861.26

You have 10 days to cure the amount above before legal action is initiated.

If you have any questions or comments, please do not hesitate to contact the undersigned at (323) 692-7083 or email me at jbrodsky@hfcacceptance.com.

Regards,

HFC Acceptance, LLC

*Jeff Brodsky*

Jeff Brodsky
President

# EXHIBIT 10

# HFC ACCEPTANCE, LLC.

## CONTINUING CORPORATE GUARANTEE

Whereas a "MASTER FLEET FINANCE AGREEMENT" ("AGREEMENT") has been entered into by and between HFC ACCEPTANCE, LLC, a California, hereinafter ("CREDITOR") and AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC. hereinafter ("DEBTOR/S"); and whereas CREDITOR requires further guarantees from the principals / owners of the DEBTOR for the protection of the CREDITOR and to guarantee the payment of all sums due the CREDITOR from the DEBTOR as part of the transactions carried out under the AGREEMENT, and in consideration of the CREDITOR entering into the AGREEMENT, the parties agree as follows:

1.    For the benefit of the CREDITOR, but in consideration of all financial Accommodations given, or to be given, to the DEBTOR by the CREDITOR, the undersigned (AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC) ("Guarantors"), unconditionally guarantees the prompt payment of all indebtedness, obligations, debts, damages, liabilities of the DEBTOR, which the DEBTOR may now or anytime hereafter owe to the CREDITOR arising out of any of the sales transactions between the DEBTOR and CREDITOR pursuant to the AGREEMENT.

2.    Each of the terms, condition, and obligations, of the AGREEMENT are hereby incorporated by reference into the within "Continuing Guarantee", as though set forth fully herein.

3.    The Guarantor agrees that the CREDITOR may in its absolute discretion and with-out prejudice to, or in any way limiting the liability of the Guarantor to the CREDITOR:  (a) extend credit to the DEBTOR in such amounts and at such times as the DEBTOR AND/OR CREDITOR may determine, in its sole discretion;  (b) grant extension of time or other accommodations under the AGREEMENT; (c) change the interest rate, terms, or prices that CREDITOR charges to DEBTOR for the purchase or finance of motor vehicles;  (d) accept or make accommodations or other arrangements with the DEBTOR which the CREDITOR in its sole and absolute discretion determines is in it's best interest.  The CREDITOR may also from time to time change the terms and conditions of the AGREEMENT, and Guarantor acknowledges and agrees that any such changes or other accommodations and/or changes in the liabilities of the DEBTOR to the Guarantor, do not any way limit, modify, or excuse the guarantee that the Guarantor herein provides to the benefit of the CREDITOR.

4.    This Guarantee shall be a continuing guarantee and obligation, and shall cover all indebtedness and liability of the DEBTOR, and includes without limitation all obligations and liabilities contained in the AGREEENT, including without limitation the obligation to pay, on demand by the CREDITOR, the balance of any funds owed to the CREDITOR for the purchase or finance of motor vehicles. The Guarantor agrees to pay within 10 days of any such demand by the CREDITOR any sums owed by the DEBTOR

Page 1

Initials ᒍᗷ

to the CREDITOR under any AGREEMENT previously entered-into by the parties, including without limitation any other contracts and/or agreements entered into by CREDITOR and DEBTOR.

5.      This Guarantee shall be in force and effect till such time as the Guarantor provides, and CREDITOR actually receives written notice of the revocation of this guarantee by the Guarantor.   Guarantor agrees to provide thirty (30) days notice to the CREDITOR of its intent to revoke the within guarantee.  Notwithstanding any notice of revocation, any such revocation shall not affect the Guarantor's obligation to the CREDITOR with respect to indebtedness of the DEBTOR to the CREDITOR arising prior to the **actual** receipt of the CREDITOR of such revocation.  Notwithstanding any notice of the revocation, such revocation shall not affect in any way the Guarantor's obligation to the CREDITOR with respect to indebtedness or liabilities of the DEBTOR, that may arise in the future after the notice of such revocation, for any purchase by the DEBTOR of Motor vehicles financed by the CREDITOR prior to the notice revocation.

6.      This continuing guarantee shall secure any balance due or owing from time to time, or at any time from the DEBTOR to the CREDITOR pursuant to the Master Fleet Financing Agreement, even though payments from time to time may be made to the CREDITOR by the Guarantor, for the payment or settlement of account or indebtedness owed to the CREDITOR; no payments made by or on behalf of the Guarantor to the CREDITOR shall be held to discharge or diminish the continuing liability of the Guarantor as long as any debt arising from the Master Fleet Financing Agreement remains unpaid.

7.      The Guarantor waives all rights of subrogation, contribution, and indemnification that it has or may have as against the CREDITOR and/or DEBTOR.

8.      Guarantor specifically waives the right to plead any and all statutes of limitations as a defense to this continuing guarantee and to any indebtedness, obligation, or liability hereby guaranteed, and further agrees that any partial payments by or on behalf of the Guarantor on any indebtedness or liability of the DEBTOR, shall at the time each such payment is made, stop the running of the time within which an action may be commenced upon this guarantee.

9.      The Guarantor, by signing their signature to this continuing guarantee, further agrees that the within obligation arising pursuant to the Master Fleet Financing Agreement of the Guarantor to the CREDITOR, shall take precedence and priority over any of the other debts and liabilities, and that all assets received by the Guarantor or its representatives, successors, or assigns, shall be received and held in trust for the benefit of the CREDITOR; the Guarantor agrees that upon any liquidation or distribution of the assets of the Guarantor, that any and all debts and liabilities owed to the CREDITOR by the DEBTOR and/or the Guarantor, shall be paid in full until full satisfaction of all debts and liabilities owed to CREDITOR by the Guarantor and/or DEBTOR.

Initials TB

10.     The Guarantor agrees that all its assets, shall be subject to the performance of the within guarantee. Where the Guarantor is a corporation, partnership, or other association, the Guarantor warrants and represents that it has such office and authority to bind the corporation, partnership, or other association, to the obligations hereunder.

11.     In the event any party to this agreement shall bring suit or court action to enforce the terms of this agreement, the prevailing party in that action shall be entitled to all costs incurred in the action, including attorneys' fees, which shall be paid by the non-prevailing party.    This right to attorneys' fees and costs by a prevailing party is cumulative and not exclusive, and the parties expressly reserve the right to any other remedy at law or equity for any breach of the within continuing guarantee and/or AGREEMENT.

12.     This continuing guarantee may be assigned by the CREDITOR in its sole discretion with any or all the indebtedness or liabilities which it guarantees, and in the event of any assignment the Guarantor shall be bound as above to the assignee without in any manner affecting Guarantor's liability hereunder.

13.     This continuing guarantee shall inure to the benefit of and bind the heirs, administrators, executors, successors, and assigns of the CREDITOR, and shall be construed as a joint and several obligation of each of the undersigned Guarantors where there is more than one.

14.     This continuing guarantee, and any action taken by any of the parties to enforce any of its obligations, shall be construed and interpreted pursuant to the laws of the State of California.

15.     Except as specifically stated herein, no terms or provisions of this continuing guarantee may be changed, modified, or amended, without the written consent of the CREDITOR.   Should any provision of this guarantee be determined to be unenforceable by a court of competent jurisdiction, all other provisions shall remain effective.

16.     The within writing constitutes the full and complete agreement between the parties with respect to the "continuing guarantee", and the parties agree that no other oral promises or considerations of any kind have been made or extended in order to obtain the within guarantee.

17.     The Guarantor acknowledges and agrees that they have had the opportunity to have the within continuing guarantee to be reviewed by independent counsel of their own choice, and to have such independent counsel represent them throughout all negotiations which preceded the execution of this agreement. Accordingly, it is agreed that any legal rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to the interpretation of this agreement or its addendum, amendments, or exhibits thereto.

18.     The parties to this guarantee agree that regardless of where the document is executed, that all disputes hereunder will be submitted for resolution in the City of Los Angeles, County of Los Angeles, State of California. The parties further agree that in the event any legal proceeding is initiated to enforce the terms of this agreement or rights arising hereunder, such suit may be filed in the County of Los Angeles, State of California, and DEBTOR and Guarantor specifically agree to submit to the jurisdiction of the California Courts, specifically waive any objections the parties have or may have as to personal jurisdiction in California, and agree to be bound by any final decision or judgment rendered therein.

19.     All notices required or permitted under this Agreement shall be in writing, and will be deemed given when sent by regular mail, postage pre-paid, or when delivered or transmitted by personal delivery, overnight carrier, or facsimile transmission, to the address of each party as set forth next to their respective signatures, or to the respective facsimile number as the case may be. Guarantor agrees to provide current addresses and/or fax numbers where any notices of this Agreement are to be sent.  The parties further agree that service of any summons and complaint of any legal action initiated to enforce any of the rights and obligations created by the agreement herein, may be effectuated by U.S. mail, return receipt requested, to the parties at the addresses set forth herein.  It is the obligation of both parties to this agreement to advise the other of any changes to the addresses at which the party may receive legal notices, and failure to do so will not invalidate any notice or service of summons made at or sent to the addresses herein.

**BY EXECUTING THIS GUARANTEE, GUARANTOR IS CLEARLY GUARANTEEING THE DEBTS AND OBLIGATIONS OF A THIRD PARTY. ONCE EXECUTED, THE GUARANTOR IS FULLY OBLIGATED UNDER THIS GUARANTEE AND THE GUARANTOR DOES NOT HAVE ANY LEGAL RIGHT TO UNILATERALLY RESCIND, CANCEL, TERMINATE, MODIFY OR IGNORE THE OBLIGATIONS CREATED BY THIS GUARANTEE. THIS GUARANTEE HAS BEEN EXECUTED IN A COMMERCIAL SETTING AS PART OF A BUSINESS/COMMERICAL LENDING TRANSACTION BY AND BETWEEN CREDITOR, DEBTOR, AND/OR GUARANTOR. PLEASE READ CAREFULLY PRIOR TO EXECUTION. YOUR SIGNATURE TO THIS DOCUMENT IS EVIDENCE THAT YOU HAVE READ IT, UNDERSTAND IT, AND FREELY ANDCOMPLETELY AGREE TO ITS TERMS. Dated: 10-06-22**

GUARANTORS:

AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC

By: _____

MIRIAM MINAYA
Notary Public, State of New York
Reg. No. 01MI6371812
Qualified in Richmond County
Commission Expires 03/05/20 2 6

10 19 2022

(Owner/ Member - Yitzchok, M Birnhack)

Page 5

Initials  IB

# EXHIBIT 11

# HFC ACCEPTANCE, LLC.

## PERSONAL AND CONTINUING GUARANTEE
### RECITAL - RENT CAR AGREEMENT

Whereas a "MASTER FLEET FINANCE AGREEMENT" ("AGREEMENT") has been entered into by and between HFC ACCEPTANCE, LLC, hereinafter ("CREDITOR") and AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group. LLC, YTS Group, LLC, all New York Corporations hereinafter ("DEBTORS"); and whereas CREDITOR requires further guarantees from the principals / owners of the DEBTOR for the protection of the CREDITOR and to guarantee the payment of all sums due the CREDITOR from the DEBTOR as part of the transactions carried out under the AGREEMENT, and in consideration of the CREDITOR entering into the AGREEMENT, the parties agree as follows:

1.      For the benefit of the CREDITOR, but in consideration of all financial Accommodations given, or to be given, to the DEBTOR by the CREDITOR, the undersigned (Yitzchok, M Birnhack) ("Guarantor"), unconditionally, personally and individually, guarantees the prompt payment of all indebtedness, obligations, debts, damages, liabilities of the DEBTOR , which the DEBTOR may now or anytime hereafter owe to the CREDITOR arising out of any of the sales transactions between the DEBTOR and CREDITOR pursuant to the AGREEMENT.

2.      Each of the terms, condition, and obligations, of the AGREEMENT are hereby incorporated by reference into the within "Personal and Continuing Guarantee", as though set forth fully herein.

3.      The Guarantor agrees that the CREDITOR may in its absolute discretion and with-out prejudice to, or in any way limiting the liability of the Guarantor to the CREDITOR:   (a) extend credit to the DEBTOR in such amounts and at such times as the DEBTOR AND/OR CREDITOR may determine, in its sole discretion;   (b) grant extension of time, or other accommodations under the AGREEMENT;   (c) change the interest rate, terms, or prices that CREDITOR charges to DEBTOR  for the purchase or finance of motor vehicles;   (d) accept or make accommodations or other arrangements with the DEBTOR which the CREDITOR in its sole and absolute discretion determines is in it's best interest.  The CREDITOR may also from time to time change the terms and conditions of the AGREEMENT, and Guarantor acknowledges and agrees that any such changes or other accommodations and/or changes in the liabilities of the DEBTOR to the Guarantor, do not any way limit, modify, or excuse the personal or individual guarantee that the Guarantor herein provides to the benefit of the CREDITOR.

4.      This Guarantee shall be a continuing guarantee and obligation, and shall cover all indebtedness and liability of the DEBTOR, and includes without limitation all obligations and liabilities contained in the AGREEMENT, including without limitation the obligation to pay, on demand by the CREDITOR, the balance of any funds owed to the CREDITOR for the purchase or finance of motor vehicles.  The Guarantor agrees to pay within 10 days of any such demand by the CREDITOR any sums owed by the DEBTOR

Page 1.

Initials �address TB

to the CREDITOR under any AGREEMENT previously entered into by the parties, including without limitation any other contracts and/or agreements entered into by CREDITOR and DEBTOR.

5.      This Guarantee shall be in force and effect till such time as the Guarantor provides, and CREDITOR actually receives written notice of the revocation of this guarantee by the Guarantor.   Guarantor agrees to provide thirty (30) days notice to the CREDITOR of its intent to revoke the within guarantee.   Notwithstanding any notice of revocation, any such revocation shall not affect the Guarantor's obligation to the CREDITOR with respect to indebtedness of the DEBTOR to the CREDITOR arising prior to the **actual** receipt of the CREDITOR of such revocation.   Notwithstanding any notice of the revocation, such revocation shall not affect in any way the Guarantor's obligation to the CREDITOR with respect to indebtedness or liabilities of the DEBTOR, that may arise in the future after the notice of such revocation, for any purchase by the DEBTOR of Motor vehicles financed by the CREDITOR prior to the notice revocation.

6.      This continuing personal guarantee shall secure any balance due or owing from time to time, or at any time from the DEBTOR to the CREDITOR pursuant to the Master Fleet Financing Agreement, even though payments from time to time may be made to the CREDITOR by the Guarantor, for the payment or settlement of account or indebtedness owed to the CREDITOR; no payments made by or on behalf of the Guarantor to the CREDITOR shall be held to discharge or diminish the continuing liability of the Guarantor as long as any debt arising from the Master Fleet Financing Agreement remains unpaid.

7.      The Guarantor waives all rights of subrogation, contribution, and indemnification that it has or may have as against the CREDITOR and/or DEBTOR.

8.      Guarantor specifically waives the right to plead any and all statutes of limitations as a defense to this continuing guarantee and to any indebtedness, obligation, or liability hereby guaranteed, and further agrees that any partial payments by or on behalf of the Guarantor on any indebtedness or liability of the DEBTOR, shall at the time each such payment is made, stop the running of the time within which an action may be commenced upon this guarantee.

9.      The Guarantor, by his/her signature to this personal and continuing guarantee, further agrees that the within obligation arising pursuant to the Master Fleet Financing Agreement of the Guarantor to the CREDITOR, shall take precedence and priority over any of the other debts and liabilities, and that all assets received by the Guarantor or its representatives, successors, or assigns, shall be received and held in trust for the benefit of the CREDITOR; the Guarantor agrees that upon any liquidation or distribution of the assets of the Guarantor, that any and all debts and liabilities owed to the CREDITOR by the DEBTOR and/or the Guarantor, shall be paid in full until full satisfaction of all debts and liabilities owed to CREDITOR by the Guarantor and/or DEBTOR.

10.     Where the Guarantor is an individual, the Guarantor agrees that all its assets, whether held as separate or community property in the case of a married person, shall be subject to the performance of the within guarantee; where the Guarantor is a corporation, partnership, or other association, the Guarantor warrants and represents that it has such office and authority to bind the corporation, partnership, or other association, to the obligations hereunder.

11.     In the event any party to this agreement shall bring suit or court action to enforce the terms of this agreement,  the prevailing party in that action shall be entitled to all costs incurred in the action , including attorneys' fees, which shall be paid by the non-prevailing party.   This right to attorneys' fees and costs by a prevailing party is cumulative and not exclusive, and the parties expressly reserve the right to any other remedy at law or equity for any breach of the within continuing guarantee and/or AGREEMENT.

12.     This continuing guarantee may be assigned by the CREDITOR in its sole discretion with any or all the indebtedness or liabilities which it guarantees, and in the event of any assignment the Guarantor shall be bound as above to the assignee without in any manner affecting Guarantor's liability hereunder.

13.     This continuing guarantee shall inure to the benefit of and bind the heirs, administrators, executors, successors, and assigns of the CREDITOR, and shall be construed as a joint and several obligation of each of the undersigned Guarantors where there is more than one.

14.     This continuing guarantee, and any action taken by any of the parties to enforce any of its obligations, shall be construed and interpreted pursuant to the laws of the State of California.

15.     Except as specifically stated herein, no terms or provisions of this continuing guarantee may be changed, modified, or amended, without the written consent of the CREDITOR.   Should any provision of this guarantee be determined to be unenforceable by a court of competent jurisdiction, all other provisions shall remain effective.

16.     The within writing constitutes the full and complete agreement between the parties with respect to the "continuing guarantee", and the parties agree that no other oral promises or considerations of any kind have been made or extended in order to obtain the within guarantee.

17.     The Guarantor acknowledges and agrees that they have had the opportunity to have the within continuing guarantee to be reviewed by independent counsel of their own choice, and to have such independent counsel represent them throughout all negotiations which preceded the execution of this agreement.   Accordingly, it is agreed that any legal rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to the interpretation of this agreement or its addendum, amendments, or exhibits thereto.

18.     The parties to this guarantee agree that regardless of where the document is executed, that all disputes hereunder will be submitted for resolution in the City of Los Angeles, County of Los Angeles, State of California. The parties further agree that in the event any legal proceeding is initiated to enforce the terms of this agreement or rights arising hereunder, such suit may be filed in the County of Los Angeles, State of California, and DEBTOR and Guarantor specifically agree to submit to the jurisdiction of the California Courts, specifically waive any objections the parties have or may have as to personal jurisdiction in California, and agree to be bound by any final decision or judgment rendered therein.

19.     All notices required or permitted under this Agreement shall be in writing, and will be deemed given when sent by regular mail, postage pre-paid, or when delivered or transmitted by personal delivery, overnight carrier, or facsimile transmission, to the address of each party as set forth next to their respective signatures, or to the respective facsimile number as the case may be.   Guarantor agrees to provide current addresses and/or fax numbers where any notices of this Agreement are to be sent.  The parties further agree that service of any summons and complaint of any legal action initiated to enforce any of the rights and obligations created by the agreement herein, may be effectuated by U.S. mail, return receipt requested, to the parties at the addresses set forth herein. It is the obligation of both parties to this agreement to advise the other of any changes to the addresses at which the party may receive legal notices, and failure to do so will not invalidate any notice or service of summons made at or sent to the addresses herein.

BY EXECUTING THIS GUARANTEE, GUARANTOR IS CLEARLY GUARANTEEING THE DEBTS AND OBLIGATIONS OF A THIRD PARTY.  ONCE EXECUTED, THE GUARANTOR IS FULLY OBLIGATED UNDER THIS GUARANTEE AND THE GUARANTOR DOES NOT HAVE ANY LEGAL RIGHT TO UNILATERALLY RESCIND, CANCEL, TERMINATE, MODIFY OR IGNORE THE OBLIGATIONS CREATED BY THIS GUARANTEE.    THIS GUARANTEE HAS BEEN EXECUTED IN A COMMERCIAL SETTING AS PART OF A BUSINESS/COMMERICAL LENDING TRANSACTION BY AND BETWEEN CREDITOR, DEBTOR, AND/OR GUARANTOR. PLEASE READ CAREFULLY PRIOR TO EXECUTION.  YOUR SIGNATURE TO THIS DOCUMENT IS EVIDENCE THAT YOU HAVE READ IT, UNDERSTAND IT, AND FREELY AND COMPLETELY AGREE TO ITS TERMS.

Dated: 10-06-22

GUARANTORS:

By _____

Signature – Yitzchok, M Birnhack

MIRIAM MINAYA
Notary Public, State of New York
Reg. No. 01M16371812
Qualified In Richmond County
Commission Expires 03/05/2026

10/19/2022

Page 5

Initials IB