JEFFREY S. WRUBLE (SBN: 94734)
   Email: jwruble@buchalter.com
WILLIAM S. BRODY (SBN: 136136)
   Email: wbrody@buchalter.com
DAVID E. MARK (SBN: 247283)
   Email: dmark@buchalter.com
SHIR DAVIDOVICZ (SBN: 321042)
   Email: sdavidovicz@buchalter.com
BUCHALTER
A Professional Corporation
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA  90017-2457
Telephone: (213)  891-0700
Facsimile:  (213)  896-0400

Attorneys for Plaintiff, HFC ACCEPTANCE, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HFC ACCEPTANCE, LLC, a California limited liability company, | **Case No: 2:23-cv-07744-DDP-AGR** |
| Plaintiff, | **PLAINTIFF'S *EX PARTE* APPLICATION FOR:** |
| v. | **(1)   ORDER APPOINTING TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE WHY A PERMANENT RECEIVER SHOULD NOT BE APPOINTED, AND** |
| AEZ Rent A Car LLC, a New York limited liability company; ICR Group LLC, a New York limited liability company; JHRC Corp, a New York corporation; The Bar, LLC, a New York limited liability company; WCR Group, LLC, a New York limited liability company; YTS Group, LLC, a New York limited liability company; Yitzchok M. Birnhack, an individual domiciled in New York, | **(2)   TEMPORARY RESTRAINING ORDER IN AID OF RECEIVER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION IN AID OF RECEIVER SHOULD NOT BE ISSUED;** |
| Defendants. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Submitted Concurrently with Declarations of Jeffrey Brodsky, Bradley D. Sharp, and Shir Davidovicz; [Proposed] Order |
| | **[NO HEARING SET]** |

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12

PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE

Case No. 2:23-cv-07744-DDP-AGR

## APPLICATION

Plaintiff HFC Acceptance, LLC, a California limited liability company ("Plaintiff") submits this *Ex Parte* Application for: (1) an Order Appointing a Temporary Receiver Against Defendants AEZ Rent A Car LLC, a New York limited liability company; ICR Group LLC, a New York limited liability company; JHRC Corp, a New York corporation; The Bar, LLC, a New York limited liability company; WCR Group, LLC, a New York limited liability company; and YTS Group, LLC, a New York limited liability company (together, "Defendant Borrowers" and together with Defendant Yitzchok M. Birnhack, "Defendants") and an Order to Show Cause Why a Permanent Receiver Should Not Be Appointed; and (2) a Temporary Restraining Order in Aid of Receiver and an Order to Show Cause Why a Preliminary Injunction in Aid of Receiver Should Not Be Issued (the "Application").

By this Application, Plaintiff seeks the appointment of Bradley D. Sharp as temporary receiver ("Receiver") with respect to 55 vehicles (defined below as the HFC Financed Vehicles) that were purchased by Defendant Borrowers with loans provided by Plaintiff and other assets that serve as collateral to secure obligations owed by Defendant Borrowers to Plaintiff, and an order to show cause why Receiver's appointment should not be permanent.[1] Plaintiff also seeks a temporary restraining order to assist Receiver in taking possession, maintaining the value, transferring, and liquidating the HFC Financed Vehicles, and an order to show cause why a preliminary injunction should not be issued.

## JUSTIFICATION FOR EX PARTE APPLICATION

Defendant Borrowers operate affiliated car rental companies with locations in New York and New Jersey. Plaintiff provided loans to Defendant Borrowers that Defendant Borrowers used to purchase the HFC Financed Vehicles for use in their car rental businesses. Beginning in May 2023, Defendant Borrowers were in default

---

[1] The Receiver's duties and powers are set forth in the [Proposed] Order submitted concurrently with this Application.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12

1

PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE

Case No. 2:23-cv-07744-DDP-AGR

of the Loan Agreement (defined below) by failing to pay the full amount of the monthly payment due at that time and for each month thereafter. Those defaults alone constitute grounds for the appointment of Receiver to protect, recover, and liquidate the HFC Financed Vehicles.

Aside from the default by Defendant Borrowers under the Loan Agreement, Plaintiff risks irreparable injury and loss due to the inherent nature of the HFC Financed Vehicles being motor vehicles and Defendant Borrowers' use of them in their car rental business. Even if unused, the HFC Financed Vehicles depreciate at an approximate rate of 1.5% per month. The wear and tear and risk of damage from the continued use of the HFC Financed Vehicles by third party customers of Defendant Borrowers will result in further depreciation. Moreover, the HFC Financed Vehicles are mobile and can be easily hidden or absconded. Because the HFC Financed Vehicles are rented to and in the possession of third party customers of Defendant Borrowers, the location of the HFC Financed Vehicles at any given time are unknown not only to Plaintiff, but to Defendant Borrowers as well, and are at heightened risk of being damaged, lost, or stolen. Further, Defendant Borrowers are the only ones with information regarding its customers, and if Defendant Borrowers' current financial predicament results in the cessation of their business operations, Plaintiff, as a practical matter, will have no ability to locate or recover the HFC Financed Vehicles.

The Application is being brought on an *ex parte* basis because immediate relief is necessary to protect Plaintiff and to protect the HFC Financed Vehicles against depreciation, possible damage and concealment, and loss. Additionally, the appointment of Receiver is necessary because the HFC Financed Vehicles are located in various states, and without Defendant Borrowers' cooperation, Plaintiff's ability to recover the HFC Financed Vehicles is virtually impossible.

Given the fact that the HFC Financed Vehicles are in the possession of third party customers of Defendant Borrowers, Plaintiff has no practical means of

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12

2

PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE

Case No. 2:23-cv-07744-DDP-AGR

marshaling and securing the HFC Financed Vehicles and has no choice but to seek the Court's assistance. Under the circumstances, *ex parte* appointment of Receiver is justified and essential in order to prevent further loss and damage to Plaintiff.

## **BASIS FOR RELIEF**

This Application is based upon Rule 66 of the Federal Rules of Civil Procedure, and Rules 7-19, 65-1, 66-1, 66-2, 66-3 and 66-4 of the Civil Local Rules of the United States District Court for the Central District of California (the "Local Rules").

This Application is also based upon the terms of the Security Agreement (defined below) that, in pertinent part, provides as follows:

> To the extent permitted by applicable law, Lender shall have the following rights and remedies regarding the appointment of a receiver: (a) **Lender may have a receiver appointed as a matter of right**, (b) the receiver . . . may serve without bond, and (c) all fees of the receiver and his or her attorney shall become part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

(emphasis added.)

Additionally, this Application is based upon the attached Memorandum of Points and Authorities; the declarations of Jeffrey Brodsky, Bradley D. Sharp, and Shir Davidovicz filed concurrently herewith; all pleadings, records, and files in this action; and such other evidence as may be presented at or prior to a hearing on this Application.

DATED: September 21, 2023

BUCHALTER
A Professional Corporation


By:     */s/ Shir Davidovicz*
JEFFREY S. WRUBLE
WILLIAM S. BRODY
DAVID E. MARK
SHIR DAVIDOVICZ
Attorneys for Plaintiff,
HFC ACCEPTANCE, LLC

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12

3

PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE

Case No. 2:23-cv-07744-DDP-AGR

# TABLE OF CONTENTS

**PAGE**

APPLICATION ........................................................................................ 1

JUSTIFICATION FOR EX PARTE APPLICATION ............................................ 1

BASIS FOR RELIEF ............................................................................... 3

I.     INTRODUCTION ........................................................................ 1

II.    COMPLIANCE WITH LOCAL RULE 7-19 .................................... 2

III.   FACTUAL BACKGROUND ......................................................... 4

     A.    THE AGREEMENTS ........................................................ 4

     B.    DEFENDANT BORROWERS' DEFAULTS .................................. 4

IV.   APPOINTMENT OF RECEIVER ON AN EX PARTE BASIS IS NECESSARY AS THE ONLY PRACTICAL MEANS OF PROTECTING THE HFC FINANCED VEHICLES AND PLAINTIFF'S INTERESTS IN THE HFC FINANCED VEHICLES ............................................... 5

V.    THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER IN AID OF RECEIVER ............................................................. 11

VI.   CONCLUSION ........................................................................ 11

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12

i

**PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE**

Case No.

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Canada Life Assurance Co. v. LaPeter*,
563 F.3d 837 (9th Cir. 2009) ........................................................................9, 10

**Rules**

7-19.1 ............................................................................................................... 3

Federal Rule of Civil Procedure 66 ................................................................. 5

Local Rule 66-1 .............................................................................................. 9

Local Rule 66-3 .............................................................................................. 9

Local Rule 66-4 .............................................................................................10

Local Rule 66-4.1 ..........................................................................................10

Local Rules 7-19 ............................................................................................ 3

Rule 65(b) of the Federal Rules of Civil Procedure ....................................10

Rule 65(c) of the Federal Rules of Civil Procedure ....................................11

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12

ii

**PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE**

Case No. 2:23-cv-07744-DDP-AGR

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In October 2022, Plaintiff and Borrower Defendants entered into a Loan Agreement (defined below) pursuant to which Plaintiff provided loans to Defendant Borrowers that Defendant Borrowers used to purchase of 55 motor vehicles (the "HFC Financed Vehicles") that Defendant Borrowers use in their car rental business in New York and New Jersey.  Because Defendant Borrowers rent the HFC Financed Vehicles to third party customers as part of their car rental business, the HFC Financed Vehicles are not located in any one particular location, but may be located anywhere while in the possession of third party customers of Defendant Borrowers.  See Declaration of Jeffrey Brodsky ("Brodsky Decl.") filed concurrently with this Application.

Defendant Borrowers have not disputed the debt owed to Plaintiff and have not responded to a notice of default served on them by Plaintiff. Nevertheless, Defendant Borrowers continue to operate and place the HFC Financed Vehicles at risk of loss while at the same time increasing the mileage and wear and tear on the vehicles, further decreasing their values, yet keeping for themselves the income being generated from the rental of the HFC Financed Vehicles.

Pursuant to the Security Agreement (defined below), Plaintiff was granted a security interest in the HFC Financed Vehicles that was perfected by registration of Plaintiff's name as "lienholder" on the certificates of title relating to the HFC Financed Vehicles.[2] Pursuant to the Loan Documents (defined below) and applicable law, Plaintiff has the right to immediate possession of the HFC Financed Vehicles. Because Plaintiff is the only named party on the certificates of title as "lienholder," no other creditor has a perfected lien or interest in the HFC Financed Vehicles. The continued use of the HFC Financed Vehicles not only deprives Plaintiff of the benefit of its interest in the HFC Financed Vehicles and its ability to

---

[2] HFC is in the process of registering its name as lienholder on five HFC Financed Vehicles.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12                                     1
PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING         Case No. 2:20-cv-2184-DMG
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE                               (SKx)

liquidate the HFC Financed Vehicles in order to avoid further depreciation or risk of loss, Defendant Borrowers' renting of the HFC Financed Vehicles to third party customers results in further wear and tear and puts the HFC Financed Vehicles at high and unnecessary risk of damage and destruction. In addition, because Defendant Borrowers are the only ones that possess information about the customers who possess the HFC Financed Vehicles, recovery of the HFC Financed Vehicles is difficult and virtually impossible if Defendant Borrowers cease operations. Finally, because the HFC Financed Vehicles are disbursed throughout the New York, New Jersey, and perhaps elsewhere and are in possession of and being driven by third party customers, Plaintiff cannot simply look to its "self-help" remedies to repossess the HFC Financed Vehicles.

Based upon the foregoing, Receiver taking possession of the HFC Financed Vehicles is the only practical means of protecting Plaintiff and assuring that the HFC Financed Vehicles are recovered and timely liquidated to reduce the risk of loss and irreparable injury to Plaintiff.

## II.   COMPLIANCE WITH LOCAL RULE 7-19

As of the time this Application was prepared, and as of the time notice of this Application was given to Defendants, counsel for Plaintiff was not aware of any counsel representing any of the Defendants in connection with this matter. Defendants' contact information is as follows:

Yitzchok M. Birnhack
412 Avenue J,
Brooklyn, NY, United States, 11230-3329
Phone: 347-409-8300
Email: isaacbirn@gmail.com

Yitzchok M. Birnhack, Sole Owner
AEZ Rent A Car LLC
5314 16th Avenue Suite 202,
Brooklyn, NY, United States, 11204

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12

2

PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE

Case No. 2:23-cv-07744-DDP-
AGR

Phone: 347-409-8300
Email: isaacbirn@gmail.com

Yitzchok M. Birnhack, Sole Owner
ICR Group LLC
199 Lee Avenue, Suite 675,
Brooklyn, NY, United States, 11211
Phone: 347-409-8300
Email: isaacbirn@gmail.com

Yitzchok M. Birnhack, Sole Owner
JHRC Corp
5314 16th Avenue Suite 202,
Brooklyn, NY, United States, 11204
Phone: 347-409-8300
Email: isaacbirn@gmail.com

Yitzchok M. Birnhack, Sole Owner
The Bar, LLC
199 Lee Avenue, Suite 675,
Brooklyn, NY, United States, 11211
Phone: 347-409-8300
Email: isaacbirn@gmail.com

Yitzchok M. Birnhack, Sole Owner
WCR Group, LLC
5314 16th Avenue Suite 202,
Brooklyn, NY, United States, 11204
Phone: 347-409-8300
Email: isaacbirn@gmail.com

Yitzchok M. Birnhack, Sole Owner
YTS Group, LLC
199 Lee Avenue, Suite 675,
Brooklyn, NY, United States, 11211
Phone: 347-409-8300
Email: isaacbirn@gmail.com

The details respecting compliance with Local Rule 7-19.1 are set forth in the concurrently filed Declaration of Shir Davidovicz.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12                                                    3

PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING          Case No. 2:23-cv-07744-DDP-
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE                        AGR

## III.   FACTUAL BACKGROUND

### A.   THE AGREEMENTS

On or about October 6, 2022, Plaintiff and Defendant Borrowers entered into a Master Fleet Finance Agreement dated as of October 5, 2022 (the "Loan Agreement"), a Commercial Security Agreement  (the "Security Agreement"), and other related documents (collectively with the Loan Agreement and Security Agreement, the "Loan Documents").  Copies of the Loan Agreement and Security Agreement are attached as Exhibits "1" and "2", respectively, to the Declaration of Jeffrey Brodsky ("Brodsky Decl.") and described therein.  Brodsky Decl., ¶ 5.

Pursuant to the Loan Agreement, Plaintiff made loans to Defendant Borrowers that Defendant Borrowers used to purchase the HFC Financed Vehicles for use in Defendant Borrowers' car rental businesses. Brodsky Decl., ¶ 5. Pursuant to the Security Agreement, Borrower Defendants granted a security interest in favor of Plaintiff in the HFC Financed Vehicles to secure performance of all obligations arising under the Loan Documents owed by Defendant Borrowers to Plaintiff, including the repayment of indebtedness owed by Defendant Borrowers to Plaintiff. Brodsky Decl., ¶ 7. Plaintiff perfected its security interest in the HFC Financed Vehicles by registration of its name as "lienholder" on the certificates of title (or submitting an application or such registration) of each of the HFC Financed Vehicles.[3] Brodsky Decl., ¶ 8. In addition, Plaintiff filed UCC financing statements with the New York Secretary of State with respect to each Defendant Borrower as "debtor."  Brodsky Decl., ¶ 9. Because Plaintiff's name is the only name identified as a "lienholder" on the Certificates of Title relating to the HFC Financed Vehicles, Plaintiff's security interest in the only perfected security interest in the HFC Financed Vehicles. Brodsky Decl., ¶ 10.

### B.   DEFENDANT BORROWERS' DEFAULTS

Just seven months after entering into the Loan Agreement, Defendant

---

[3] HFC is in the process of registering its name as lienholder on five HFC Financed Vehicles.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12

4

PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE

Case No. 2:23-cv-07744-DDP-AGR

Borrowers defaulted under the Loan Documents by, among other acts or failures to act, failing to pay the full amount of the monthly payment due at that time and for each month thereafter.  Brodsky Decl., ¶ 12. Notice of the defaults was served on Defendants on July 10, 2023. Brodsky Decl., ¶ 13.

Based upon the defaults, the full balance of the obligations under the Loan Agreement is due and payable and as of September 11, 2023, the full amount due by Defendants to Plaintiff is not less than $1,603,926.59, plus additional interest, late charges, fees, and other obligations (including reimbursement of the amount of attorneys' fees incurred by Plaintiff) that continue to accrue pursuant to the terms of Loan Documents. Brodsky Decl., ¶ 14.

## IV. APPOINTMENT OF RECEIVER ON AN EX PARTE BASIS IS NECESSARY AS THE ONLY PRACTICAL MEANS OF PROTECTING THE HFC FINANCED VEHICLES AND PLAINTIFF'S INTERESTS IN THE HFC FINANCED VEHICLES

The appointment of Receiver is essential to take possession of, safeguard, and liquidate the HFC Financed Vehicles, with the proceeds distributed to Plaintiff in partial satisfaction of the amounts due and owing by Defendant Borrowers to Plaintiff.

The Security Agreement expressly provides for the appointment of a receiver following an event of default:

> To the extent permitted by applicable law, Lender shall have the following rights and remedies regarding the appointment of a receiver: (a) Lender may have a receiver appointed as a matter of right, (b) the receiver may . . . serve without bond, and (c) all fees of the receiver and his or her attorney shall become part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

Security Agreement, p. 10.

BUCHALTER
A Professional Corporation
Los Angeles

BN 78071137V12

5

PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE

Case No. 2:23-cv-07744-DDP-
AGR

Federal Rule of Civil Procedure 66 provides:

> These rules govern an action in which the appointment of a receiver is
> sought or a receiver sues or is sued. But the practice in administering
> an estate by a receiver or a similar court-appointed officer must accord
> with the historical practice in federal courts or with a local rule. An
> action in which a receiver has been appointed may be dismissed only
> by court order.

The Ninth Circuit has identified certain factors that courts may consider
regarding the appointment of a receiver:

> [T]here is no precise formula for determining when a receiver may be
> appointed. Rather, federal courts consider a variety of factors in
> making this determination, including, for example: (1) whether [the
> party] seeking the appointment has a valid claim; (2) whether there is
> fraudulent conduct or the probability of fraudulent conduct, by the
> defendant; (3) whether the property is in imminent danger of being
> lost, concealed, injured, diminished in value or squandered; (4)
> whether legal remedies are inadequate; (5) whether the harm to
> plaintiff by denial of the appointment would outweigh injury to the
> party opposing appointment; (6) plaintiff's probable success in the
> action and the possibility of irreparable injury to plaintiff's interest in
> the property; and (7) whether [the] plaintiff's interest sought to be
> protected will in fact be well-served by receivership.

*Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (internal
citations omitted); see also California Code of Civil Procedure § 564 (providing
similar factors).[4]

No single factor is dispositive, and a court may still may appoint a receiver
under its "broad" equitable powers without consideration of any particular factor.

---

[4] The Loan Documents provide that they are governed by California law.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12

6

**PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE**

Case No. 2:23-cv-07744-DDP-AGR

As noted by the Ninth Circuit:

> Despite our endorsement of this approach, we also recognized a court's authority to appoint a receiver regardless of these factors, noting that [e]ven if inadequacy of the security and insolvency of the debtor did not appear, consideration of other circumstances [may] disclose[ ] ... reasons for appointing ... a receiver. Thus, in View Crest, we appear to have recognized the broad nature of a court's equitable powers in determining whether or not to appoint a receiver, and that there is no precise formula for making this determination. We agree with this perspective and hold that the district court has broad discretion in appointing a receiver, that it may consider a host of relevant factors, and that no one factor is dispositive.

*Canada Life Assurance Co., supra*, 563 F.3d at 845 (internal citations and quotation marks omitted).

In this case, an application of the applicable factors identified in *Canada Life Assurance Co.* warrant the immediate appointment of Receiver.[5]

1. <u>Valid Claim</u>.  Plaintiff has a valid claim weighing in favor of appointment. Plaintiff's claims are based upon written contracts, including the Loan Agreement, Security Agreement, and other Loan Documents. Defendant Borrowers' defaulted under the Loan Agreement by failing to perform certain obligations, including making monthly payments when due and the entire amount of the indebtedness upon demand. Brodsky Decl., ¶12. Plaintiff has a valid and perfected security interest in the HFC Financed Vehicles and is entitled to an effective remedy pursuant to contract and applicable law to recover on its collateral. Brodsky Decl., ¶ 7-10.

2. <u>Imminent Danger of Loss</u>.  The HFC Financed Vehicles are in imminent danger of loss or dissipation in value. The HFC Financed Vehicles are disbursed

---

[5] The factor relating to fraud is not applicable because no fraud is presently alleged in this matter.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12

7

**PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE**

Case No. 2:23-cv-07744-DDP-
AGR

1   throughout New York, New Jersey, and perhaps elsewhere and because the HFC

2   Financed Vehicles are in the possession of Defendant Borrowers' customers, their

3   exact locations at any given time is unknown to not only Plaintiff, but Defendant

4   Borrowers as well.  Because of the fact that the HFC Financed Vehicles are motor

5   vehicles and in the possession of third parties, the only practical way to recover the

6   HFC Financed Vehicles is by the appointment of Receiver who will have

7   nationwide powers and access to a staff and resources who can arrange for the

8   recovery and marshalling of the HFC Financed Vehicles. Brodsky Decl., ¶ 16-17.

9   Further, because the HFC Financed Vehicles continue to be rented to Defendant

10  Borrowers' customers, they are subject to further wear and tear, accidents, and

11  mechanics' liens. Brodsky Decl., ¶ 15.

12      3.  No Other Adequate Remedies.  Because the HFC Financed Vehicles are

13  rented to Defendant Borrowers' customers and the location of the HFC Financed

14  Vehicles at any given time are unknown to both Plaintiff and Defendant Borrowers,

15  protecting and recovering the Financed Vehicles is virtually impossible without the

16  appointment of Receiver. Brodsky Decl., ¶¶ 16-17.

17      4.  Plaintiff's Injury Outweighs the Defendant Borrowers' Harm.  The harm

18  to Plaintiff by denial of the appointment of Receiver would greatly outweigh injury

19  to Defendant Borrowers. First, the scope of the receivership being sought by

20  Plaintiff is specifically tailored to just protect Plaintiff's interest in its collateral and

21  not to control Defendant Borrowers' business or other assets (such as motor

22  vehicles that are not Plaintiff's collateral) that would otherwise prevent Defendant

23  Borrowers from continuing to operate their businesses. Brodsky Decl., ¶ 18.

24  Borrower Defendants will still be able to operate their rental car business with other

25  motor vehicles, while the loss and risk of irreparable injury that would be suffered

26  by Plaintiff without the appointment of Receiver could be devastating and complete

27  because of the very nature of the HFC Financed Vehicles being motor vehicles, the

28  fact that they are being rented to and used by third parties, and the fact that the HFC

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12

8

PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE

Case No. 2:23-cv-07744-DDP-
AGR

Financed Vehicles are the primary collateral securing Defendant Borrowers'
obligations owed to Plaintiff.

5. <u>Plaintiff's Probable Success and the Possibility of Irreparable Injury</u>. The
causes of action in the Complaint arise from Defendant Borrowers' clearly defined,
unexcused, and documented breaches and failure to perform under the terms of the
Loan Agreement and other Loan Documents. Brodsky Decl., ¶¶ 5-10. Plaintiff has
fully performed under the terms of the Loan Agreements by making the loans
pursuant to which Defendant Borrowers used to purchase the HFC Financed
Vehicles, such that Defendant Borrowers have no legitimate defenses to excuse
them from performance of their obligations.  Brodsky Decl., ¶ 11. As discussed
elsewhere in this pleading, increasing loss and the possibility of irreparable injury
are unavoidable without the appointment of Receiver.

6. <u>Plaintiff's Interest Would Be Well-Served by Receiver</u>.  As discussed
elsewhere in this pleading, the appointment of Receiver is the only way the HFC
Financed Vehicles can be protected and recovered and Plaintiff can avoid loss of its
interest in its collateral.  Given the nature of Defendant Borrowers' car rental
businesses pursuant to which the HFC Financed Vehicles are in the possession of
and used by unknown third party customers at unknown locations, Plaintiff has no
conventional means of protecting, securing, marshaling, repossessing, and
liquidating the HFC Financed Vehicles, and Plaintiff has no choice but to seek the
Court's assistance. Further because the HFC Financed Vehicles are possessed by
third party customers and are subject to continuing depreciation, damage,
destruction, third party mechanic's liens, and theft, the need for Receiver to protect
and recover the assets is paramount.  Finally, Defendant Borrowers have consented
to such relief in the Loan Documents, which also supports their understanding of
the need for the appointment of Receiver as requested.

Based on the foregoing, each of the applicable factors enunciated by the
Ninth Circuit to be evaluated regarding the appointment of Receiver weigh in favor

1  of appointment of Receiver in this case.

2       Local Rule 66-1 provides that the appointment of a receiver is temporary.

3  Local Rule 66-3 further provides:

4            Concurrently with appointment of a temporary receiver, the Court

5            shall issue an order to show cause requiring the parties and the

6            creditors of the defendant to show cause why a permanent receiver

7            should not be appointed.

8       As a result, if the Court appoints a temporary receiver, Plaintiff requests that

9  the Court set this matter for an order to show cause ("OSC") as to why Receiver

10 should not be appointed on a permanent basis.

11      Although Local Rule 66-4 of the Local Rules of this Court requires the OSC

12 regarding the appointment of a permanent receiver to be served on all known

13 creditors of Defendant Borrowers, Local Rule 66-4.1 provides the Court with

14 discretion to modify the referenced service requirement. Plaintiff requests that the

15 Court modify such requirement to permit Plaintiff to serve only Defendant

16 Borrowers.  First, the scope of the receivership requested and the facts relating to

17 the defaults by Defendant Borrowers pursuant to contracts between Defendant

18 Borrowers and Plaintiff do not implicate all of the creditors of Defendant

19 Borrowers. As noted above, Plaintiff is not seeking the appointment of Receiver to

20 operate or close Defendant Borrowers' business operations, to control all of

21 Defendant Borrowers' assets or monies, or to deprive other creditors of assets in

22 which they may have ownership interests or upon which they may have senior

23 priority liens. Rather, the receivership being requested is for the limited purpose of

24 safeguarding only the HFC Financed Vehicles in which Plaintiff is the sole

25 lienholder on the certificates of title, in which case no other creditor could have a

26 perfected lien, let alone a lien with priority that is senior to Plaintiff's lien. Second,

27 Plaintiff does not know and has no way of determining the identity of all of

28 Defendant Borrowers' creditors. Thus, Plaintiff proposes and requests that the

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 78071137V12
10
PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE
Case No. 2:23-cv-07744-DDP-AGR

1   Court approve limiting service of the OSC regarding the appointment of a

2   permanent receiver to Defendant Borrowers.

3   **V.    THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING**

4   **ORDER IN AID OF RECEIVER**

5         Plaintiff seeks a temporary restraining order, and because the temporary

6   restraining order is being sought with notice, the limitations under Rule 65(b) of the

7   Federal Rules of Civil Procedure do not apply.

8         For the same reasons that the Court should appoint Receiver, it is equally

9   appropriate and important that the Court issue a temporary restraining order,

10  pending a hearing on a preliminary injunction, to ensure that Defendant Borrowers

11  do not interfere with Receiver's ability to locate and recover the HFC Financed

12  Vehicles. Defendant Borrowers should be restrained from transferring,

13  encumbering, selling, removing, or damaging the HFC Financed Vehicles, using

14  the HFC Financed Vehicles or otherwise interfering with Receiver's duties, as set

15  forth in the [Proposed] Order. The temporary restraining order is necessary to

16  protect the HFC Financed Vehicles from immediate and irreparable injury, loss, or

17  damage pending the disposition of those vehicles. Brodsky Decl., ¶ 19. Thus,

18  Plaintiff respectfully requests that this Court issue a temporary restraining order

19  pending a hearing on an order to show cause why a preliminary injunction should

20  not be issued. Consistent with the provisions of Rule 65(c) of the Federal Rules of

21  Civil Procedure, in light of the circumstances described herein, Plaintiff

22  respectfully suggests the Court set the amount of the surety bond which Plaintiff

23  will file at $10,000.

24  **VI.   CONCLUSION**

25         For the foregoing reasons, Plaintiff respectfully requests that this Court enter

26  an order:  (a) appointing Bradley D. Sharp as temporary receiver as requested

27  herein; (b) issuing an order to show cause why Receiver should not be permanent;

28  (c) issuing a temporary restraining order in aid of Receiver; and (d) issuing an order

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12

11

PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING
TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE

Case No. 2:23-cv-07744-DDP-AGR

1   to show cause for the granting of a preliminary injunction in aid of Receiver.

2

3   DATED: September 21, 2023          BUCHALTER
                                        A Professional Corporation
4

5

6   By:    /s/ Shir Davidovicz
                                        JEFFREY S. WRUBLE
7                                       WILLIAM S. BRODY
                                        DAVID E. MARK
8                                       SHIR DAVIDOVICZ
                                        Attorneys For Plaintiff
9                                       HFC ACCEPTANCE, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 78071137V12                          12
**PLAINTIFF'S *EX PARTE* APPLICATION FOR ORDER APPOINTING**     Case No. 2:23-cv-07744-DDP-
**TEMPORARY RECEIVER AND ORDER TO SHOW CAUSE**                  AGR

# EXHIBIT 1

# HFC ACCEPTANCE, LLC
## MASTER FLEET FINANCE AGREEMENT

THIS MASTER FLEET FINANCE AGREEMENT ("Agreement"), is made and entered into as of <u>October 6, 2022</u> is made by and between HFC ACCEPTANCE, LLC, a California limited liability company (hereinafter "Creditor") and <u>AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC all New York Corporations</u> (hereinafter "Debtor").

WHEREAS, Midway Auto Center, Creditor's affiliate, is licensed in the State of California as a motor vehicle dealer, and sells as a dealer certain passenger motor vehicles;

WHEREAS, Creditor provides financing to purchasers of passenger motor vehicles sold by Midway Auto Center, or by various other dealers and vehicle manufacturers;

WHEREAS, Debtor, for all purposes relevant to this Agreement, is in the business of owning and maintaining fleets of motor vehicles used primarily in connection with daily rental car businesses;

WHEREAS, Debtor desires to purchase from Midway Auto Center or from various other dealers and manufacturers, certain passenger motor vehicles, and to finance such purchase(s) by way of a loan or loans made by Creditor to Debtor; and

WHEREAS Creditor and Debtor desire to provide for terms and conditions of all such financing by means of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained herein, and for other good and valuable consideration, the parties agree as follows:

1.   <u>Variable Interest Rate</u>

All advances made by Creditor to Debtor shall bear an interest rate according to the following formula:

The interest rate applicable to this Agreement shall be fixed on a monthly basis and shall be the **GREATER OF**:

    a.   A simple interest charge equal to the 30-Day LIBOR Rate as quoted on the last day of the preceding month by the British Bankers' Association, as the Inter-Bank Market Offered Rate per annum offered for U.S. dollar deposits on the London Inter-Bank Market, PLUS a margin of 5.75%;

        **OR**

    b.   A simple interest charge equal to the rate of interest announced on the last day of the preceding month by the Federal Reserve Statistical Release H.15, as its "prime rate" for unsecured commercial loans, PLUS a margin of 2.5%.

**Under no circumstances shall the interest rate under this Agreement be less than Eight (8%) per annum (the "Floor Rate").** The Floor Rate may be amended, from time to time, by written amendment to be executed by the Debtor. Interest shall be computed daily based on a three hundred sixty (360) day year for the actual number of days elapsed.

_____ (Parties initials)

2.   <u>Payoff Upon Demand.</u>

I

Notwithstanding the repayment and other terms, established by Creditor for any advance, until such time as all of the balances of any and all loans, evidenced by this Agreement, have been paid to Creditor in full, Creditor may, at any time, declare the entire principal balance under this Agreement and all accrued and unpaid interest immediately due and payable, and Debtor shall immediately pay that amount.

3.    Term of Agreement.

(a)    This Agreement shall become effective as of the date stated above and shall continue in full force and effect thereafter until terminated as provided herein.

(b)    Creditor may terminate this Agreement immediately with written notice to Debtor. Debtor may terminate this Agreement upon 30 days' prior written notice to Creditor setting forth the effective date of such termination. The termination of this Agreement shall not affect the obligations of the Debtor, and those of the Debtor's guarantor(s), to repay the balance of any outstanding loan(s), made prior to termination, and, as to any balance remaining unpaid, the terms and conditions of this Agreement shall continue to apply as if this Agreement had not been terminated.

4.    Scope of Agreement.

Notwithstanding any other provision of this Agreement or of any other contract between the parties to the contrary, the provisions of this Agreement shall apply to all contracts and/or Orders (as that term is defined below) to be entered into between Creditor and Debtor during the term of this Agreement for the purchase and financing of motor vehicles which are the subject of this Agreement, unless the parties expressly agree by written modification to this Agreement, signed by the persons who executed this Agreement, or their respective successors or superiors, that the provisions of this Agreement shall not apply.

5.    Orders.

(a)    The term "Order" means any written, electronic, or other communication reflecting Debtor's desire to obtain financing from Creditor. After the date of this Agreement, Debtor agrees to place Orders using the format supplied or approved in writing by Creditor. Creditor may, in its sole discretion, accept other forms of Orders. Creditor may assume that Orders transmitted via electronic mail are genuine if they ostensibly bear Debtor's electronic mail address.

(b)    Orders will be subject to acceptance and approval by Creditor. Creditor may accept or decline any Order, in whole or in part, in Creditor's sole discretion.

(c)    Orders may be accepted by written notice to Debtor, or by actual delivery of the motor vehicles ordered, to Debtor or to Debtor's agent. Except as otherwise provided in this Agreement, Orders shall not be cancelable after acceptance by Creditor. If accepted, any Order issued by any corporation or other business entity controlled by, controlling, or under common control with Debtor will be deemed for all purposes to be an Order submitted by Debtor hereunder and Debtor shall be bound by the terms thereof.

(d)    Debtor acknowledges the following notice has been made available to Debtor in the manner provided under California Vehicle Code section 11709.2: "NO COOLING-OFF PERIOD. California law does not provide for a 'cooling-off' or other cancellation period for vehicle lease or purchase contracts. Therefore, you cannot later cancel such a contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign a motor vehicle purchase or lease contract, it may only be canceled with the agreement of the Seller/Creditor or lessor or for legal cause, such as fraud."

_JB_       _____ (Parties initials)

2

(e)     In the event that Debtor is delinquent in payment of any indebtedness or obligation to Creditor (hereunder or otherwise), Creditor may, at Creditor's sole discretion, decline to provide financing for any additional pending Orders until such delinquency is cured. Any such suspension by Creditor shall not be construed as a termination or breach of this Agreement by Creditor.

(f)     Debtor understands and agrees that all orders are subject to the approval of Creditor, and that Debtor may be required to provide adequate security or comply with other credit and finance requirements before such approval will be granted. This paragraph does not limit Creditor's discretion under paragraph 5(b) to accept or reject Orders.

6.     Payments.

(a)     Debtor promises to pay to Creditor, timely, the amount of the indebtedness on such terms as shall be set forth in the Orders and in this Agreement. All such Orders shall be subject to the Creditor's right to declare all sums due and payable, at any time, as set forth in Paragraph 2 above. All payments shall be made to HFC ACCEPTANCE, LLC, and must be received at Creditor's principal place of business located at 4751 Wilshire Blvd., Suite 110, Los Angeles, CA 90010. Payments to persons not authorized by Creditor, in writing, to collect payments on Creditor's behalf, shall not relieve Debtor from the obligation to pay. Such a designation, if any, to a common carrier or otherwise, shall be for purposes of collecting funds only.

(b)     Payments of accrued but unpaid interest and principal shall be made on a monthly basis on or prior to the tenth (10th) day of each calendar month.

(c)     A late payment charge will be assessed monthly on any obligation not paid when due at a rate equal to five percent (5%) of the amount that is late; provided, however, that such late payment charge shall not be assessed at a rate which exceeds the maximum rate permitted by applicable law. In the event of Debtor's failure to make the payment by the date such payment becomes due, Debtor will also be liable to Creditor for any collection costs and expenses incurred by Creditor, including reasonable attorneys' fees and court costs and including, without limitation, post-judgment attorneys' fees.

7.     Security Interest

Debtor, to secure prompt and unconditional performance, including payment, to Creditor upon the terms and as and when due of any and all indebtedness, obligations or liabilities of Debtor to Creditor for the purchase of each motor vehicle, hereby grants, assigns and transfers to Creditor a continuing first and senior lien on and security interest in each such motor vehicle sold, all accessions and additions thereto, all service contracts or insurance policies held in connection therewith, and all proceeds and products thereof (including, without limitation, all lease agreements respecting same or chattel paper secured thereby), whether now owned or hereafter acquired (the "Collateral").

8.     Events of Default.

Each of the following shall constitute an event of default ("Event of Default") under this Agreement:

(a) Payment Default. Debtor fails to make payment when due under this Agreement.

(b) Other Defaults. Debtor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any related documents or to comply or to perform any term, obligation, covenant or condition contained in any other agreement between Creditor and Debtor.

_IB_     _____ (Parties initials)

3

(c) False Statements.  Any warranty, representation or statement made or furnished to Creditor by Debtor or on Debtor's behalf under this Agreement or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

(d) Death or Insolvency.  The dissolution or termination of Debtor's existence as a going business or the death of any partner, the insolvency of Debtor, the appointment of a receiver for any part of Debtor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Debtor.

(e) 3rd Party Creditor or Forfeiture Proceedings.  Commencement of foreclosure or forfeiture proceeding, self-help, repossession or any other method, by any creditor of Debtor or by any governmental agency against any collateral securing the loan(s). This includes a garnishment of any of Debtor's accounts.  However, this Event of Default shall not apply if there is a good faith dispute by Debtor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Debtor gives Creditor written notice of the creditor or forfeiture proceeding and deposits with Creditor monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Creditor, in its sole discretion, as being an adequate reserve or bond for the dispute.

(f) Events Affecting Guarantor.  Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Agreement.

(g) Change In Ownership.  The assignment of transfer of a twenty-five percent (25%) or more in Debtor to any third party.

(h) Adverse Change.  A material adverse change occurs in Debtor's financial condition, or Creditor believes the prospect of payment or performance of this Agreement is impaired.

(i) Cure Provisions.  If any default, other than a default in payment, is curable and if Debtor has not been given a notice of a breach of the same provision of this Agreement within the preceding three (3) months, it may be cured if Debtor, after receiving written notice from Creditor demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Creditor deems in Creditor's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

9.      Creditor's Rights Upon Default.

(a)     In the event Debtor is in default of any of its obligations contained herein, Creditor may declare Debtor in default and may exercise the following rights and remedies, in addition to all other rights and remedies it may have as a secured party under the Uniform Commercial Code:

(i) To declare all Obligations or other obligations of any kind and nature of Debtor to Creditor immediately due and payable.

(ii) To require Debtor to assemble the Collateral and make it available to Creditor for possession at a place designated by Creditor which is reasonably convenient to both parties.

_JV_            _____ (Parties initials)

4

(iii) To take immediate and exclusive possession of the Collateral, or any part thereof, and for that purpose Creditor may, so far as Debtor can give authority therefor, with or without judicial process, enter upon any premises on which the Collateral may be situated and remove the same therefrom.

(iv) To retain the Collateral in satisfaction of the Obligations or, at Creditor's sole discretion, to hold, maintain, preserve and prepare the Collateral for public or private sale. The net proceeds realized upon any such disposition after deducting all expenses incurred by Creditor for the sale of the collateral or the like, and the actual attorneys' fees and legal expenses incurred by Creditor in enforcing its rights and claims hereunder and disposing of the Collateral, shall be applied in satisfaction of the Obligations secured hereby. Creditor will account to Debtor for any surplus realized on such disposition and Debtor shall remain liable for any deficiency.

(c)     Debtor grants to Creditor an irrevocable power of attorney to endorse all cash and non-cash proceeds of the Collateral to effect collection thereof.

(d)     Debtor shall not sell, assign, transfer, lease, resell, rent or otherwise dispose of any type of Collateral except in the ordinary course of Debtor's business of renting motor vehicles for payment. Debtor may not cause or permit the Collateral to be moved outside the continental United States until all outstanding indebtedness with respect to such Collateral has been paid in full.

(e)     Until such time as all outstanding balance of principal and accrued interest has been paid in full, Creditor shall have the right to file one or more financing statements pursuant to the California Uniform Commercial Code, in form suitable for filing to perfect a purchase money security interest in the Collateral and otherwise satisfactory to Creditor. Debtor irrevocably appoints Creditor, as its attorney- in -fact, to sign and file, in Debtor's name, a financing statement at any time with respect to the Collateral and the proceeds thereof, it being understood and intended by Debtor that such power of attorney is coupled with a security interest.

(f)     The remedies provided in this Section 9 shall be in addition to any other rights and remedies provided in this Agreement and applicable law.

10.     Power of Attorney.

For matters authorized by this Agreement or applicable law respecting vehicle title and insurance matters, Debtor appoints Creditor, or any employee, agent, or contractor of Creditor, which Creditor designates, as Debtor's attorney-in-fact with full power of substitution to sign in Debtor's name all documents respecting transfer of interests in the vehicles, including certificates of ownership, registration cards, applications, forms and/or any other documents required or necessary to transfer or convey any and all right, title in and to a vehicle to any person or persons and to perform all other necessary or incidental acts on Debtor's behalf. This power is irrevocable until all outstanding indebtedness has been fully satisfied.

11.     Assignment, Transfer.

Debtor shall not transfer, sell or assign, or attempt to transfer, sell or assign, this Agreement or sell or transfer or delegate any duty, or obligation or responsibility of Debtor under this Agreement. Subject to the foregoing, this Agreement shall be binding on the successors and assigns of the parties.

_____  _____ (Parties initials)

12.     Choice of Law; Attorney Fees; Jurisdiction and Venue.

5

This Agreement shall be governed by, and construed in accordance with, the laws of the State of California. In the event any legal action is necessary to enforce any provision of this Agreement, the unsuccessful party shall pay to the prevailing party reasonable attorney's fees and costs. The parties further agree that in the event any legal proceeding is initiated to enforce the terms of this Agreement or rights arising hereunder, any such suit may be filed in the County of Los Angeles, State of California; and Debtor and Creditor specifically agree to submit to the jurisdiction of the California Courts, specifically waive any objections they have or may have as to personal jurisdiction in California, and agree to be bound by any final decision or judgment rendered therein.

13.    Arbitration of Disputes and Waiver of Jury Trial.

Any disputes arising between Creditor and Debtor regarding this agreement, the personal guarantee or any purchase order financed under this agreement fees charged or shall be resolved by binding arbitration. Such arbitration shall be conducted in accordance with the rules of the American Arbitration Association or JAMS/Endispute. The arbitrator shall be empowered to order the losing party in the arbitration to reimburse the prevailing party for all expenses incurred in connection with the arbitration, including without limitation the arbitrator's fees and reasonable attorney fees and costs. It is further understood that:

- The parties are waiving their right to a jury trial and to seek remedies available in court proceedings;

- Pre-arbitration discovery is generally more limited than and different from court proceedings;

- The arbitrator's award is not required to include factual findings or legal reasoning; and

- Any party's right to appeal or to seek modification of the award is strictly limited and the award shall be final and binding upon the parties.

14.    Irreparable Injury.

Any material violation of the provisions of this Agreement respecting payment of invoices can result in irreparable injury to Creditor. Creditor shall be entitled to applicable pre-trial remedies before a court of competent jurisdiction, including, but not limited to, writs of possession, writs of attachment, temporary restraining orders, and preliminary injunctions.

15.    Severability.

If any provision contained herein contravenes or is prohibited by laws which are held to be applicable to this Agreement, such provision shall be limited to the extent necessary so that it will not render this Agreement invalid, unlawful or unenforceable, in whole or in part, under such laws, but all other provisions of this Agreement shall remain in full force and effect.

16.    Integrated Agreement; Modifications.

This Agreement terminates and supersedes all prior written or oral agreements, if any, between Creditor and Debtor relating to the subject matter hereof, and is the final and complete agreement and understanding of the parties as to its subject matter. This Agreement may be supplemented, amended, or modified only by a written instrument referring to this Agreement, and signed by the authorized officers of each of the parties. No representative of Creditor shall have authority to waive any of the provisions of this Agreement or to make any amendment or modification of or any other change in, addition to, or deletion of any portion of this Agreement or to make any other agreement which imposes any obligation on either Creditor or Debtor which is not specifically imposed by this Agreement, unless such waiver, amendment, modification, change, addition, deletion, or agreement is in writing and signed by Debtor and two duly authorized officers of Creditor.

_IB_          _____ (Parties initials)

17.    Nonwaiver.

6

Except as otherwise provided in this Agreement, the failure of either party at any time to require performance by the other party of any provision hereof shall in no way affect the full right to require such performance at any time thereafter, nor shall the waiver by either party of a breach of any provision hereof constitute a waiver of any succeeding breach of the same or any other provision or constitute a waiver of the provision itself.

18.   Notices.

Except as otherwise specified in this Agreement, all notices or other communications hereunder shall be in writing and deemed to have been duly given when (a) delivered in person or (b) when transmitted via facsimile, provided that a duplicate copy of said transmission is mailed to the address(es) set forth below and further provided that the notifying party maintains a record of such facsimile transmission, or (c) two (2) days following their deposit in the U.S. mail, first-class postage prepaid, and addressed as follows:

**To Debtor:**

AEZ Rent A Car, LLC
5314 16th Ave Suite 202
Brooklyn, NY 11204
Phone: 347-409-8300

**To Creditor:**

HFC ACCEPTANCE, LLC
Attention: Jeff Brodsky
4751 Wilshire Blvd., Suite 110
Los Angeles, California. 90010

The parties further agree that service of any summons and complaint of any legal action initiated to enforce any of the rights and obligations created by the agreement herein, may be effectuated by U.S. mail, return receipt requested, to the parties at the above addresses.  It is the obligation of both parties to this Agreement to advise the other of any changes to the addresses at which the party may receive legal notices, and failure to do so will not invalidate any notice or service of summons made at the above addresses.

19.   Time of the Essence.

Time is of the essence as it relates to the parties' respective obligations and performance under the terms of this Agreement.

20.   Independent Relationship of Parties.

The parties stand in the relation of arms-length contracting parties, there being no relation, or anticipated relation of joint venture, partnership, agency, dealership, franchise, intellectual property licensee, or otherwise.  Debtor and Creditor do hereby acknowledge and agree that they have had the opportunity to be represented by independent counsel of their own choice throughout all negotiations which preceded the execution of this Agreement, and that they have executed this Agreement with the consent and upon the advice of said independent counsel.  Accordingly, it is agreed that any legal rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to the interpretation of this Agreement or any addendum, amendment, or exhibits.

21. Remedies.

The remedies provided under this Agreement are cumulative, and are in addition to any remedies provided by law or equity.  No course of dealing between Debtor and Creditor, or any delay or failure on the part of Creditor in exercising any rights under this Agreement shall operate as a waiver of any rights of the Creditor.

JB   _____ (Parties initials)

7

22.    Incentive Payments, Manufacture Rebates and Hold Backs.

Debtor acknowledges and agrees that all manufacturers' incentive payments, rebates, hold-backs and other payments ("Incentives") made to a purchaser of any vehicle which is financed under this Agreement must be in writing, evidencing credits to the Debtor in the purchase order. In the event of a failure to state the payee for any such Incentives, the payee shall be deemed to be Midway Auto Center and no credit on this account shall be given to the Debtor in this event.

23.    Inspection, Insurance and Audits.

Creditor has the right to inspect all Collateral at any time during the term of this Agreement. Debtor shall, upon Creditor's request, provide to Creditor fleet, rental information, and insurance information regarding the status, condition and location of all vehicles financed by Creditor. Further, Debtor shall furnish Creditor with all insurance policies, bonds, DMV Assignment of Deposit and a copy of the Notice of Assignment and Direction to Pay Earnings, and other evidence of liability and physical damage coverage on the Collateral in the event of loss. All policies protecting the Collateral must name Creditor as "Loss Payee" in the event of damage or destruction of said Collateral. In the event that an audit of the Collateral reveals that any vehicle financed under this Agreement is missing, damaged or destroyed, Debtor shall, within five (5) days following receipt of written demand from Creditor, pay the entire balance due on said Collateral to Creditor.

24.    Authority to Sign

Each party warrants to the other that the individual whose signature appears below has the authority to sign this Agreement on behalf of their respective party.

25.    Loss Reserve: $100 per unit finance.
26.    Advance: 90% Manufacturers Invoice

**THIS FINANCING AGREEMENT HAS BEEN EXECUTED IN A COMMERCIAL SETTING BY PARITES WITH EQUAL BARGAINING POWER AS PART OF A BUSINESS/COMMERICAL LENDING TRANSACTION BY AND BETWEEN CREDITOR AND DEBTOR. PLEASE READ CAREFULLY PRIOR TO EXECUTION. YOUR SIGNATURE TO THIS DOCUMENT IS EVIDENCE THAT YOU HAVE READ IT, UNDERSTAND IT, AND FREELY AND COMPLETELY AGREE TO ITS TERMS.**

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

**DEBTOR:**                                          **CREDITOR:**

AEZ Rent A Car LLC                               HFC ACCEPTANCE, LLC
ICR Group, LLC
JHRC Corp
The Bar, LLC
WCR Group, LLC
YTS Group, LLC

By_____            By_____
Signature – Yitzchok, M Birnhack            Jeff Brodsky, President

MIRIAM MINAYA
Notary Public, State of New York
Reg. No. 01MI6371812
Qualified in Richmond County
Commission Expires 03/05/2026

10/11/22          8

# EXHIBIT 2

## COMMERCIAL SECURITY AGREEMENT

| Dealer Names | AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC |
|---|---|
| Date | 10-06-22 |
| Credit Limit | $2,000,000 |

BORROWERS / GRANTORS:
AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC
5314 16th Ave Suite 202
Brooklyn, NY 11204

LENDER:
HFC ACCEPTANCE, LLC
4751 Wilshire Blvd., Suite 110
Los Angeles, Ca 90010

THIS COMMERCIAL SECURITY AGREEMENT is entered into between AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC (referred to below as "Grantor/s"); and HFC ACCEPTANCE, LLC (referred to below as "Lender"). For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement. Terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

> **Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

> **Collateral.** The word "Collateral" means the following described property of Grantor, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

> All inventory, accounts, contract rights, equipment and general intangibles.

In addition, the word "Collateral" includes all of the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(a)   All attachments, accessions, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described above.

(b)   All products and produce of any property described in this Collateral section.

(c)   All accounts, contract rights, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.

(d)   All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.

(e)   All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**Event of Default.** The words "Event of Default" mean and include and of the Events of Default set forth below in the section titled "EVENTS OF DEFAULT."

**Grantor.** The word "Grantor" AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC and its successors and assigns.

**Guarantor.** The word "Guarantor" means and includes without limitation, each and all of the guarantors, (Yitzchok, M Birnhack, AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC) sureties, and accommodation parties in connection with any Indebtedness.

**Indebtedness.** The word "Indebtedness" means the Indebtedness evidenced by the Note, including all principal and interest, together with all other Indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means HFC ACCEPTANCE, LLC, its successors and assigns.

2

**Note.** The word "Note" means the note or credit agreement established October 6, 2022 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancing of, consolidations of and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**OBLIGATIONS OF GRANTOR.** Grantor warrants and covenants to Lender as follows:

**Perfection of Security Interest.** Grantor agrees to execute such financing statements and to take whatever other actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper if not delivered to Lender for possession by Lender. Grantor hereby appoints Lender as its irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect or to continue the security interest granted in this Agreement. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral. Grantor promptly will notify Lender before any change in Grantor's name including any change to the assumed business names of Grantor. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation or organization and bylaws or operating agreement do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, contract rights, chattel paper, or general intangibles, the Collateral is enforceable in accordance with its terms, is genuine, and complies with applicable laws concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide

3

Indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or therefore shipped or delivered pursuant to a contract of sale, or for services theretofore performed by Grantor with or for the account debtor; there shall be no setoffs or counterclaims against any such account; and no agreement under which any deductions or discounts may be claimed shall have been made with the account debtor except those disclosed to Lender in writing.

**Location of the Collateral.** Grantor, upon request of Lender, will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (a) all real property owned or being purchased by Grantor; (b) all real property being rented or leased by Grantor; (c) all storage facilities owned, rented, leased, or being used by Grantor; and (d) all other properties where Collateral is or may be located. Except in the ordinary course of its business, Grantor shall not remove the Collateral from its existing locations without the prior written consent of Lender.

**Removal of Collateral.** Grantor shall keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts, the records concerning the Collateral) at Grantor's address shown above, or at such other locations as are acceptable to Lender. Except in the ordinary course of its business, including the sales of inventory, Grantor shall not remove the Collateral from its existing locations without the prior written consent of Lender. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of California, without the prior written consent of Lender.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interest granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

4

**Title.** Grantor represents and warrants to Lender that it holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Collateral Schedules and Locations.** As often as Lender shall require, and insofar as the Collateral consists of accounts and general intangibles, Grantor shall deliver to Lender schedules of such Collateral, including such information as Lender may require, including without limitation names and addresses of account debtors and agings of accounts and general intangibles. Insofar as the Collateral consists of inventory and equipment, Grantor shall deliver to Lender, as often as Lender shall require, such lists descriptions, and designations of such Collateral as Lender may require to identify the nature, extent, and location of such Collateral. Such information shall be submitted for Grantor and each of its subsidiaries or related companies.

**Maintenance and Inspection of Collateral.** Grantor shall maintain all tangible Collateral in good condition and repair. Grantor will not commit or permit damage to or destruction of the Collateral or any part of the Collateral. Lender and its designated representatives and agents shall have the right at all reasonable times to examine, inspect, and audit the Collateral wherever located. Grantor shall immediately notify Lender of all cases involving the return, rejection, repossession, loss or damage of or to any Collateral; of any request for credit or adjustment or of any other dispute arising with respect to the Collateral; and generally of all happenings and events affecting the Collateral or the value or the amount of the Collateral.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond, or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorney's fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Compliance With Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances and regulations of all governmental authorities applicable to the production, disposition, or use of the Collateral. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that, except in the ordinary and customary use of collateral in connection with operation of rental business, the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used for generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for hazardous wastes and substances. Grantor hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be canceled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this

Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if it chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral. Lender may make proof of loss if Grantor fails to do so fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Upon default of Grantor which is not cured within 15 days of written notice Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured; (e) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (f) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS** Upon default of Grantor which is not cured within 15 days of written notice and except otherwise provided below with respect to accounts, Grantor may have possession of the

tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Collateral.

**EXPENDITURES BY LENDER.** If not discharged or paid when due, Lender may (but shall not be obligated to) discharge or pay any amounts required to be discharged or paid by Grantor under this Agreement, including without limitation all taxes, liens, security interests, encumbrances, and other claims, at any time levied or placed on the Collateral. Lender also may (but shall not be obligated to) pay all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses shall become a part of the Indebtedness and, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and to be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of an Event of Default.

**EVENTS OF DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

> **Default on Indebtedness.** Failure of Grantor to make any payment when due on the Indebtedness.

> **Other Defaults.** Failure of Grantor to comply with or perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or in any other agreement between Lender and Grantor.

> **False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Grantor under this Agreement is false or misleading in any material respect, either now or at the time made or furnished.

8

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Collateral or any other collateral securing the Indebtedness. This includes a garnishment of any of Grantor's deposit accounts with Lender.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor dies or becomes incompetent.

**Insecurity.** Lender, in good faith, deems itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon default of Grantor which is not cured within 15 days of written notice, at any time thereafter, Lender shall have all the rights of a secured party under the California Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and to make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the **Collateral.** If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in its own name or that of

9

Grantor.  Lender may sell the Collateral at public auction or private sale.  Unless the Collateral threatens to decline speedily in value is of a type customarily sold on a recognized market, Lender will give Grantor reasonable notice of the time after which any private sale or any other intended disposition of the Collateral is to be made.  The requirements of reasonable notice shall be met if such notice is given at least ten (10) days, or such lesser time as required by state law, before the time of the sale or disposition.  All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.**  To the extent permitted by applicable law, Lender shall have the following rights and remedies regarding the appointment of a receiver: (a) Lender may have a receiver appointed as a matter of right, (b) the receiver may be an employee of Lender and may serve without bond, and (c) all fees of the receiver and his or her attorney shall become part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Collect Revenues, Apply Accounts.**  Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral.  Lender may at any time in its discretion transfer any Collateral into its own name or that of its nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine.  Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due.  For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral.  To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.**  If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement.  Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any and all other rights and remedies it may have available at law, in equity, or otherwise.

**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or the Related Documents or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law and Venue.** This Agreement has been delivered to Lender and accepted by Lender in the State of California. In the event of a lawsuit, Grantor agrees to submit to the jurisdiction of the courts of Los Angeles County, State of California. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

**Attorney's Fees and Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including attorney's fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorney's fees and legal expenses whether or not there is a lawsuit, including attorney's fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Notices.** All notices required to be given under this Agreement shall be given in writing and shall be effective when actually delivered or when deposited with a

11

nationally recognized overnight courier or deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Grantor, notice to any Grantor will constitute notice to all Grantors. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address(es).

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (a) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (b) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral and, in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Preference Payments.** Any monies Lender pays because of an asserted preference claim in Borrower's bankruptcy will become a part of the Indebtedness and, at Lender's option, shall be payable by Borrower as provided in the "EXPENDITURES BY LENDER" paragraph.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**Successor Interests.** Subject to the limitations set forth above on transfer of the Collateral, this Agreement shall be binding upon and insure to the benefit of the parties, their successors and assigns.

**Waiver.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this

Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent in subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Waiver of Co-Obligor's Rights.** If more than one person is obligated for the Indebtedness, Borrower irrevocably waives, disclaims and relinquishes all claims against such other person which Borrower has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution and exoneration.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT, AND GRANTOR AGREES TO ITS TERMS. THIS AGREEMENT IS DATED  10-06-22**

GRANTOR:
AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC

By:_____
    (Owner/Member) Yitzchok, M Birnhack

MIRIAM MINAYA
Notary Public, State of New York
Reg. No. 01MI6371812
Qualified in Richmond County
Commission Expires 03/05/2026

10/19/22

HFC ACCEPTANCE, LLC

By:_____
Jeff Brodsky,   President

CORPORATE GUARANTORS:

AEZ Rent A Car LLC, ICR Group, LLC, JHRC Corp, The Bar, LLC, WCR Group, LLC, YTS Group, LLC

By:_____
    (Owner/Member) Yitzchok, M Birnhack

MIRIAM MINAYA
Notary Public, State of New York
Reg. No. 01MI6371812
Qualified in Richmond County
Commission Expires 03/05/2026

10/19/2022

13