# SPENCE LAW OFFICE, P.C.

**55 LUMBER ROAD**
**SUITE 5**
**ROSLYN, NY  11576**
**TEL: 516-336-2060  FAX: 516-605-2084**

FILED
CLERK, U.S. DISTRICT COURT

JUN 18, 2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____JG_____ DEPUTY

April 18, 2024

**BY ECF**

The Honorable George H. Wu
District Judge
United States Courthouse
350 West 1st Street, Courtroom 9D
Los Angeles, CA, 90012

Re:     ***HFC Acceptance, LLC v. AEZ Rent A Car LLC et al***
***23-cv-07744-GW-AGR***
---------------------------------------------------------------------
***ICR Group LLC***
***Chapter 11 (Subchapter V)***
***Case No. 1-24-40151-jmm (BK EDNY)***

Dear Judge Wu:

I am proposed counsel for ICR Group LLC ("Debtor" or "ICR"), the above Subchapter V Debtor.  I understand from the docket that a hearing on a motion for contempt took place on April 15, 2024 and was granted by the Court.   I see that no Order has been entered as of yet and I would like to seek reconsideration on behalf of the Debtor and the estate to prevent immediate and irreparable harm to the Debtor and its reorganization.  I respectfully request a conference to discuss reconsideration of the Court's April 15th decision prior to the Court taking any further action, because I believe the Court was not aware of the status in the bankruptcy case.  Had it been aware, I believe the Court would not have granted the motion for contempt and to strike the non-debtor affiliate answers.  I know that the action is stayed as against my client, but the finding of contempt and striking of pleadings against non-debtor affiliates would profoundly affect the bankruptcy case and would negate all of the progress that has been made between ICR and HFC. Please note that I appeared at and provided a status of the bankruptcy case in connection with the hearing on February 1, 2024 (see attached).   The following is the current status.   The Debtor is also seeking relief as set forth after the status.

ICR filed its bankruptcy case on January 11, 2024.  ICR filed its Plan of Reorganization on February 27, 2024.   I have attached a copy of the filed Plan.   The Bankruptcy Court has given the Debtor a date of June 12, 2024 for confirmation of the Plan and ICR intends to move forward on that date. The Plan is being funded by non-debtor affiliate defendant AEZ Rent A Car LLC ("AEZ") pursuant to the terms of the Plan and the projections annexed thereto.   AEZ will also be a signatory to the Plan.   The Plan, pays HFC its allowed claim in full with interest over the 5-year period as permitted by Subchapter V.

ICR owns 36 of the 52 (or 53) vehicles which are the subject of the HFC lawsuit in California.  I have been in touch with William Brody, HFC's counsel on a regular basis since the bankruptcy case was filed.  By agreement between ICR and HFC, the Receiver inspected the first 17 ICR owned and HFC financed vehicles on January 22nd.   ICR has exchanged other vehicle

1

information as well with HFC.   In connection with ICR's Subchapter V bankruptcy case, the United States Trustee ("UST") appointed Gerard Luckman as the Subchapter V Trustee.   Mr. Luckman has been consulted on a regular basis by ICR regarding the formulation of it plan.   Mr. Luckman was appointed by the UST under the Bankruptcy Code to facilitate the development of a consensual plan of reorganization.   Section 1183(b)(7).   On April 3, 2024, there was a hearing before the Bankruptcy Court on HFC's motion to lift the automatic stay.   At the hearing, the Debtor agreed to pay HFC adequate protection payments of $25,000 per month and the Court agreed that the stay would remain in place provided that the Debtor maintains these payments. The first payment was made on that same day by 2-day overnight delivery to Mr. Brody.   In short, the Bankruptcy Court is allowing the Debtor the opportunities that are available under Subchapter V and is letting the case proceed toward confirmation of the Plan.

As for the 17 non-ICR vehicles, ICR's affiliates are turning them over to HFC by delivering them as agreed to Manheim (a used car reseller) approved by both parties.   I wanted to tell the Court prior to the hearing that arrangements had been agreed upon by the Parties as of last night.   The Plan itself actually provides for the return of these vehicles, so, the return of the non-debtor vehicles is, for the Debtor and the estate, an early implementation of the Debtor's proposed Plan.

Based on the Bankruptcy Court's decision on April 3rd to leave the stay in place (provided the Debtor makes its adequate protection monthly payments of $25,000), there is merit to the Debtor's Plan and efforts to date.   Indeed, this is a proposed 100% Plan and it should be given every opportunity to succeed.   Such a Plan, if confirmed would make all parties whole and allow the Debtor and the non-debtor affiliates to maintain their operations.   This is the global result the Debtor seeks for itself, its affiliates and its creditors and it is also the very purpose of Chapter 11.   In short, the Debtor and the non-debtor are looking to resolve this matter and pay HFC in full.   On behalf of the Debtor, I respectfully request that the Court schedule a conference prior to the entry of any order or judgment in furtherance of the April 15th hearing.

The Debtor respectfully requests a "discretionary stay" of the CA case so that the Subchapter V case is given a chance to resolve this matter.   AEZ is funding the Plan and a discretionary stay of the California action would allow AEZ and the Debtor to complete the Plan process.   A judgment against AEZ would necessarily thwart the plan process.   "A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). When considering whether to grant a stay, courts should consider "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Id.   Here, under the Plan, the Debtor is offering to turnover the 17 non-debtor vehicles and give all the funds to HFC and pay the balance in full for the 36 cars it owns over the term of the Plan at 9.5%.   Consideration should be given to the escalations of costs and the evisceration of the Debtor's rights under Subchapter V. The Plan needs to be given to the creditors to vote on it and, even if the HFC votes against the Plan, the Plan can still be confirmed non-consensually under 11 USC 1191(b).   The Debtor has received June 12, 2024 as a confirmation date and the period now until June 12th is the period the Debtor seeks in a discretionary stay from the Court.

Moreover, while the Debtor has not moved to extend the stay to AEZ or the other non-

2

debtors, I believe that the findings at the April 15, 2024 hearing implicate the automatic stay based on the circumstances of the Subchapter V case.  The parent company, AEZ, is funding the Plan (and, as the Bankruptcy Court noted on April 3rd, such circumstances are not unusual), and a judgment against AEZ would compromise the Debtor's ability to reorganize.  The Second Circuit has held that the automatic stay can extend to non-debtors where a claim against a non-debtor "will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287–88 (2d Cir. 2003) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)) (internal quotations omitted). The extension of the stay must be consistent with the purpose of the stay, which is to facilitate the reorganization of the debtor. *See Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y. 1999). The moving party must show that the failure to extend the stay would have an adverse impact on reorganization efforts. *Id.* at 242.

I also understand that under 11 U.S.C. § 105(a), bankruptcy courts have the power "to enjoin acts against third parties when they impair a debtor's ability to reorganize in a chapter 11 case." *In re Lyondell Chem. Co*., 402 B.R. 571, 587 (Bankr. S.D.N.Y. 2009).  Bankruptcy courts in the Second Circuit have construed the requirements for a preliminary injunction liberally to prevent the frustration of the reorganization process. See *In re Adelphia Comm. Corp*., 298 B.R. 49, 54 (S.D.N.Y. 2003) (quoting *MacArthur Co. v. Johns-Manville Corp*., 837 F.3d 89, 93 (2d Cir. 1988)).  However, the discretionary stay would be more efficient as it would be less costly (another benefit Congress intended for Subchapter V cases) and would merely provide a reasonable opportunity for the Debtor and AEZ to follow through on Plan confirmation.  It will not otherwise disrupt the status quo, but merely pause the case until after June 12, 2024.   In the event the Court does not agree to issue a discretionary stay, the undersigned respectfully requests a week's time prior to entry of any Order or Judgment in furtherance of the April 15th hearing to make this request to the Bankruptcy Court.

Lastly, I am not admitted to practice in the State of California or the California Federal Courts and respectfully request that I be admitted pro hac vice to provide this status and equitable relief request on behalf of the Debtor and the estate, who will be otherwise impacted and irreparably prejudiced and harmed by the relief granted against the non-debtor entities on the April 15th hearing.

Thank you for the Court's time and consideration in this matter.

Respectfully submitted,

*/s/ Robert J. Spence*

Robert J. Spence

Cc:   William Brody, Esq. (wbrody@buchalter.com)
       Edward Sherman, Esq. (ed@davidovichlaw.com)
       Kathy Bazoian Phelps (kphelps@raineslaw.com)
       Gerard R. Luckman, Sub V Trustee (gluckman@forchellilaw.com)

3

**rspence spencelawpc.com**

| | |
|---|---|
| **From:** | rspence spencelawpc.com |
| **Sent:** | Wednesday, January 31, 2024 2:37 PM |
| **To:** | Javier_Gonzalez@cacd.uscourts.gov |
| **Cc:** | Brody, William S.; Harvey, Brian T.; 'Niv Davidovich'; ed@davidovichlaw.com; Gerard R. Luckman; Isaac Birnhack; Kathy Bazoian Phelps |
| **Subject:** | HFC v. AEZ RENT A CAR, et al  USDC CASE # 2:23-cv-07744-GW-AGR  Notice re:  Court request that Defendants appear telephonically at Feb 1, 2024 hearing re: Davidovich Stein MOTION TO BE RELIEVED AS COUNSEL |
| **Attachments:** | 2029-01-30 Dkt 100 - Order re Mnt to Be Relieved.pdf |
| **Importance:** | High |

Mr. Gonzalez, I am proposed bankruptcy counsel to ICR Group LLC ("ICR") in a Subchapter V Chapter 11 case filed in the EDNY on January 10, 2024, Case No. 24- 1-24-40151-jmm.   I will be appearing tomorrow per the Court's request to respond to any bankruptcy questions regarding ICR.   Mr. Birnhack will also be present.   Kindly provide a call-in number and access code.   Thank you.

While I will attend the Court hearing at Judge Wu's request, I do not intend to file a notice of appearance or otherwise formally represent any party in the above proceeding.   Indeed, I am not admitted to practice in the State of California or the California Federal Courts.   That said, I would like to provide a brief status of the bankruptcy case of ICR for the Court's benefit.   ICR owns 36 of the 52 vehicles which are the subject of the HFC lawsuit in California.  I have been in touch with William Brody, HFC's counsel, since the bankruptcy case was filed on January 10th.  By agreement between ICR and HFC, the Receiver inspected the first 17 ICR owned and HFC financed vehicles on January 22nd.   ICR has exchanged other vehicle information as well with HFC.   ICR is in the process of arranging for the balance of the vehicles to be inspected by HFC and is still in discussions with Mr. Brody regarding scheduling of these inspections.   ICR expects to file its Subchapter V plan of reorganization in the near future under which plan it is expected that allowed secured claims will be paid in full.  In connection with ICR's Subchapter V bankruptcy case, the United States Trustee ("UST") appointed Gerard Luckman as the Subchapter V Trustee.  Mr. Luckman has been consulted on a regular basis by ICR regarding the formulation of it plan.  Mr. Luckman is appointed by the UST under the Bankruptcy Code to facilitate the development of a consensual plan of reorganization.  Section 1183(b)(7).  I am copying Mr. Luckman here if anyone wants to reach out to him to discuss this matter.  On behalf of ICR and its estate, I respectfully request sufficient time to allow the Subchapter V plan process to evolve in the Bankruptcy Court to give the parties the opportunity to work out their differences.   I believe that we have made a good start, and ICR is optimistic about reaching a resolution of HFC's claim and the claims of the other creditors in the bankruptcy case under a consensual plan.

All rights, remedies and defenses of ICR and its estate are reserved.

Thank you for the Court's time and consideration.

Resectfully,

Robert J. Spence, Esq.
Spence Law Office, P.C.
55 Lumber Road, Ste. 5
Roslyn, N.Y. 11576
516-336-2060
rspence@spencelawpc.com

**SPENCE LAW OFFICE, P.C.**
Robert J. Spence, Esq. (RS3506)
Proposed Attorneys for the Debtor and
Debtor-in-Possession
55 Lumber Road, Suite 5
Roslyn, New York 11576
Tel.:(516) 336-2060

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

|  |  |
|---|---|
|  | Chapter 11 |
| ICR GROUP, LLC, | Case No.:  24-40151-JMM |
|  |  |
| Debtor. | (Subchapter V Case) |

----------------------------------------------------------X

## DEBTOR'S PLAN OF REORGANIZATION

ICR Group, LLC, the Debtor and Debtor-In-Possession (the "Debtor") proposes the following Debtor's Plan of Reorganization pursuant to the provisions Subchapter V of Chapter 11 of the Bankruptcy Code:

### Disclosures Required for Cases Filed Under Subchapter V

**A. Description and History of the Debtor's Business**

1.       The Debtor is a New York Limited Liability Company, established in 2012 for the purpose of engaging in the car rental business.   The Debtor owns approximately 49 vehicles that it leases to related entity, AEZ Rent A Car, LLC ("AEZ").   AEZ is the central parent/operations company that leases approximately 552 vehicles in the car rental operations (the "Car Rental Business").  AEZ is also the 100% owner of the membership interests in the Debtor.

2.       In 2022, the Debtor entered into loan with HFC Acceptance LLC for the purchase of 53 vehicles for use in the Car Rental Business.   The Debtor owns 36 of the 53 vehicles purchased in connection with the HFC loan.   The loan was cumbersome from the start with its variable interest rate and terms that were not typical in the Debtor's business. The Debtor fell behind on its obligations to HFC in or about April 2023.   HFC commenced an action, not for arbitration as required by the loan documents, but in federal court in California for the appointment of a receiver. By Order dated November 27, 2023, a receiver was appointed.   Without the resources to satisfy HFC's demand for payment immediately

available, Debtor filed a Sub-Chapter V bankruptcy on January 11, 2024 in order to prevent seizure of the Debtor's assets.

**B. Liquidation Analysis**

3. To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a chapter 7 liquidation. The liquidation analysis required by 11 U.S.C. § 1190 is attached to the Plan as **Exhibit "A".** This analysis reflects that a liquidation sale of Debtor's assets would generate only an approximate gross amount of $1,100,000. The allowed secured claims total more than $2,000,000. After paying secured creditors there would be a deficiency of approximately $1,000,000 to the secured creditors and nothing left for the unsecured creditors, equity interest holders or Administrative Claims in a chapter 7 liquidation. This plan contemplate a 100% payout to All Allowed Secured Claims, payment in full to Administrative Claims and 5% to Allowed Unsecured Claims. This recovery is greater than the unsecured creditors would receive in a hypothetical Chater 7 liquidation, therefore the liquidation test under 11 U.S.C. § 1190 is met.

**C. Ability to Make Future Plan Payments and Operate Without Further Reorganization**

4. The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business. Projections that support the Debtor's ability to make all payments required by the Plan are attached to the Plan as **Exhibit "B."** *See* 11 U.S.C. § 1190.

5. The Debtor has provided projected financial information as Exhibit B. These Projections are provided on a consolidated basis and show that the Debtor will have projected disposable income from AEZ for the period described in § 1191(c)(2). The first Plan payment is expected to be paid on the Effective Date.

## ARTICLE 1: SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor from the operations of the Car Rental Business headed by the parent company, AEZ. More specifically, The Debtor plans to payoff 100% of Allowed Secured Claims. All allowed administration expenses will be paid upon the Effective Date of the Plan. Current equity holder will retain its equity in the Debtor.

This Plan provides for:

    [ 1] class of priority claims;
    [3] classes of secured claims;

[1] classes of non-priority unsecured claims; and
[1] classes of equity security holders.

**Payment of secured claims.** Secured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at one hundred cents on the dollar.

**Payment of non-priority unsecured claims.** Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately five (5%) percent of Allowed General Unsecured Claims.

**Payment of administrative expenses and priority claims**: This Plan provides for full payment of administrative expenses and priority claims. All creditors and equity security holders should refer to Articles 2 through 4 of this Plan for information regarding the precise treatment of their claim(s).

*Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)*

### ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

2.01: Class 1. All allowed claims entitled to priority under § 507(a) of the Code (except administrative expenses under § 507(a)(2) and priority tax claims under § 507(a)(8)).

2.02: Class 2. The secured claim of HFC to the extent allowed as a secured claim under § 506 of the Code.

2.03: Class 3.  The secured claim(s) of Ford Motor Credit Corp. ("FMCC") to the extent allowed as a secured claim under § 506 of the Code.

2.04: Class 4.  The secured claim(s) of Ally Financial ("Ally") to the extent allowed as a secured claim under § 506 of the Code.

2.05: Class 5.  The secured claim(s) of General Motors ("GM") to the extent allowed as a secured claim under § 506 of the Code.

2.06  Class 6.  All non-priority unsecured claims allowed under § 502 of the Code.

2.07  Class 7.  Equity interests of the Debtor.

### ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

3

3.01: Unclassified claims. Under section § 1123(a)(1), allowed administrative expenses and priority tax claims are not in classes.

3.02: Administrative expenses. Administrative expenses allowed under § 503 of the Bankruptcy Code will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Such expenses specifically include but are not limited to Debtor's attorneys' fees, Subchapter V Trustee fees and any loans made to Debtor through an approved Debtor-in-Possession financing facility.

3.03: Priority tax claims. Each holder of an allowed priority tax claim will be paid in full as of the Effective Date.

3.04: Statutory fees. All unpaid fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan will be paid on or before the effective date.


**ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

4.01: Claims and interests are treated as follows under this Plan:

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 1- Priority Claims | Unimpaired - Deemed to accept | All claims to be paid in full upon the Effective Date of the Plan |
| Class 2- Secured Claim of HFC | Unimpaired - Deemed to accept | Allowed Secured Claim to be paid in full over 5 years in equal monthly installments under the Plan at the rate of 9.5% on the principal amount owed unless sooner paid in whole or in part by sales of HFC financed vehicles in the ordinary course of business by the Debtor and non-debtor affiliates of the Debtor. All proceeds from any sale(s) less auction and transport fees and expenses, will be paid to HFC. HFC shall also receive, until paid in full, the net proceeds of sale, after payment of auction and transport fees and any lien amount balance(s), of ANY non-HFC financed vehicle by the Debtor. Proceeds from sale of vehicles shall be applied to principal first. These terms shall be in full satisfaction of claims against the Debtor and any co-obligors or guarantors. Any pre-petition liens shall be unaffected by the Plan and shall only be released upon payment in full under |

4

| | | the Plan (or, in the case of sale(s) of vehicles, upon payment of the net proceeds of the sale on a given vehicle (after deducting auction and transport fees)). The Debtor and non-debtor co-obligors or guarantors shall be released from any liability to HFC upon payment in full under the terms of the Plan. |
|---|---|---|
| Class 3-Secured Claim of FMCC | Unimpaired - Deemed to accept | Allowed Secured Claim will be paid pursuant to terms of the promissory note by and between the Debtor and FMCC unless sooner paid in whole or in part by sales of FMCC financed vehicles in the ordinary course of business by the Debtor. These terms shall be in full satisfaction of claims against the Debtor. Any pre-petition liens shall be unaffected and shall only be released upon payment in full under the Plan (or, in the case of sales of vehicles, upon payment of the full amount of the lien balance on a given vehicle). The Debtor and non-debtor co-obligors or guarantors shall be released from any liability to HFC upon payment in full under the terms of the Plan. |
| Class 4-Secured Claim of Ally | Unimpaired - Deemed to accept | Allowed Secured Claim will be paid pursuant to terms of the promissory note by and between the Debtor and Ally unless sooner paid in whole or in part by sales of Ally financed vehicles in the ordinary course of business by the Debtor. These terms shall be in full satisfaction of claims against the Debtor. Any pre-petition liens shall be unaffected and shall only be released upon payment in full under the Plan (or, in the case of sales of vehicles, upon payment of the full amount of the lien balance on a given vehicle). The Debtor and non-debtor co-obligors or guarantors shall be released from any liability to HFC upon payment in full under the terms of the Plan. |
| Class 5-Secured Claim of GM | Unimpaired - Deemed to accept | Allowed Secured Claim will be paid pursuant to terms of the promissory note by and between the Debtor and GM unless sooner paid in whole or in part by sales of GM financed vehicles in the ordinary course of business by the Debtor. These terms shall be in full satisfaction of claims against |

| | | the Debtor.  Any pre-petition liens shall be unaffected and shall only be released upon payment in full under the Plan (or, in the case of sales of vehicles, upon payment of the full amount of the lien balance on a given vehicle).  The Debtor and non-debtor co-obligors or guarantors shall be released from any liability to HFC upon payment in full under the terms of the Plan. |
|---|---|---|
| Class 6-Allowed Claims of General Unsecured Creditors | Impaired Entitled to Vote | 5% pro rata distribution to all Allowed Claims over 5 years. |
| Class 7- Equity Holders | Unimpaired Deemed to accept | All pre-petition equity interest(s) will be retained by the equity holder(s) |

## ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01: Disputed claim. A *disputed claim* is a claim that has not been allowed or disallowed and as to which either:

    (i)      A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

    (ii)     No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02: Delay of distribution on a disputed claim. No distribution will be made on account of a disputed claim unless and until it is allowed.

5.03: Settlement of disputed claims. The Debtor will have the power and authority to settle and compromise a disputed claim prior to the Effective Date with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.  After the Effective Date, the Reorganized Debtor shall have the sole authority to: (a) file, withdraw, or litigate to judgment, any objections to Claims or Interests; and (b) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Avoidance Actions.

5.04:  Any objections to Claims or Interests shall be filed on or before the first business day that is at least 60 days from the Effective Date of the Plan.  For the avoidance of doubt,

the Bankruptcy Court may extend the time period to object to Claims or Interests at any time, including before or after the expiration of sixty days after the Effective Date, in its discretion or upon request by the Debtor or any party in interest.

## ARTICLE 6: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01:  Except for (1) intercompany leases of vehicles by and between Debtor and AEZ which are assumed hereunder, or (2) executory contracts and unexpired leases that have been assumed, and if applicable assigned, either before the effective date or under section 6(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than days after the date on which the court enters the order confirming this Plan.

## ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN

7.01:  The Plan will be implemented through the payments from AEZ as reflected in the Projections and from sales of vehicles by the Debtor in the ordinary course of its business. The payments under the Plan will be made by AEZ who shall act as the disbursing agent under the Plan.

## ARTICLE 8: GENERAL PROVISIONS

8.01: Definitions and rules of construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

"Litigation Claims" shall mean any and all claims and causes of action of any kind or nature asserted, or which may be asserted, by or on behalf of the Debtor or the Debtor's Estate arising under federal or state law which have not been released pursuant to this Plan or separate order of the Bankruptcy Court, including, but not limited to, claims which are asserted herein at any time in an Adversary Proceeding, a counter-claim to a claim against the Bankruptcy Estate, or claims listed on Schedule B of the Debtor's Schedules filed in the Bankruptcy Case (whether such claims are currently listed or listed on an amended Schedule B filed prior to the entry of a final decree in this case), and any and all claims arising under or pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, whether or not litigation has been commenced with respect to such causes of action as of the Effective Date.

8.02: Effective date. The effective date of this Plan is the day that is 14 days after the entry of the confirmation order (the "Effective Date"). If, however, a stay of the confirmation

order is in effect on that date, the Effective Date will be the day after the date on which the stay expires or is otherwise terminated. These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

8.03: Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04: Binding effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.05: Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06: Controlling effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07: Corporate governance. The articles of formation and the company agreement of the  reorganized company shall be deemed to be amended in every way necessary to comply with the terms and conditions of and to carry out this plan as required by§ 1123(a)(6) of the Code.


### ARTICLE 9: DISCHARGE, EXCULPATION AND RELEASE

9.1 **Discharge.**

(i)    If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt imposed by this Plan; or

(ii)    If the Plan is confirmed under Bankruptcy Code §1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the Court shall grant the Debtor a discharge of all debts provided in Bankruptcy Code §1141(d)(1)(A), and all other debts allowed under Bankruptcy Code §503 and provided for in this Plan, except any debt: (a) on which the last payment is due after the first three (3) years of the Plan, or such other time not to exceed five (5) years fixed by the Court.

8

9.2 **Injunction.**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE CONFIRMATION DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THE DEBTOR'S PROPERTY, CO-OBLIGORS, OR THE ESTATE BASED ON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED ON OR BEFORE THE CONFIRMATION DATE, AND ANY CLAIMS THAT ARE PROPERTY OF THE DEBTOR'S BANKRUPTCY ESTATE AND INCLUDING WITHOUT LIMITATION, ENJOINMENT OF (1) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER WITH RESPECT TO ANY SUCH CLAIM AGAINST THE DEBTOR OR ITS PROPERTY, (2) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR OR ITS PROPERTY, WITH RESPECT TO SUCH CLAIM, (3) ASSERTING ANY RIGHT OF SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE TO THE DEBTOR OR THE PROPERTY OF THE DEBTOR OR THE ESTATE WITH RESPECT TO ANY SUCH CLAIM AND (4) ASSERTING ANY RIGHT OF SETOFF OR RECOUPMENT AGAINST THE DEBTOR OR THE ESTATE EXCEPT AS SPECIFICALLY PERMITTED BY § 553 OF THE BANKRUPTCY CODE (COLLECTIVELY, THE "RELEASED CLAIMS");  PROVIDED THAT NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE OR LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES, OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.  UNLESS OTHERWISE PROVIDED IN THE PLAN OR BY ORDER OF THE BANKRUPTCY COURT, ALL INJUNCTIONS OR AUTOMATIC STAYS PROVIDED FOR IN THESE CASES PURSUANT TO § 105, IF ANY, OR § 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

9.3    **Release by the Debtor.** PURSUANT TO BANKRUPTCY CODE §1123(b), AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, UPON THE EFFECTIVE DATE, THE DEBTOR SHALL RELEASE UNCONDITIONALLY,

AND HEREBY IS DEEMED TO FOREVER RELEASE UNCONDITIONALLY: (A) THE DEBTOR'S ADVISORS INCLUDING ATTORNEYS, ACCOUNTANTS AND FINANCIAL ADVISORS; (B) THE SUBCHAPTER V TRUSTEE; AND (C) ISAAC BIRNHACK (COLLECTIVELY, THE "RELEASED PARTIES"), FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER, INCLUDING THE RELEASED CLAIMS (EXCEPT FOR THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, UNDER THE PLAN), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE, EXCEPT FOR THOSE CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT CONSTITUTES GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES. IN ADDITION, THE RELEASE PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.    AEZ SHALL BE DEEMED RELEASED BY THE DEBTOR AND THE ESTATE UPON COMPLETION OF THE PAYMENTS UNDER THE PLAN FROM ANY AND ALL CLAIMS INCLUDING CLAIMS FOR ANY RECEIVABLES ARISING FROM THE LEASING OF VEHICLES FROM THE DEBTOR.

9.4    **Releases of Debtor Parties.**  NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF SUCH EFFECTIVE DATE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY OR ON BEHALF OF THE DEBTOR, AND EACH OF ITS PROFESSIONALS, REPRESENTATIVES, DISBURSING AGENT, EMPLOYEES, OFFICERS, DIRECTORS, AND EQUITY HOLDERS, TOGETHER WITH THEIR SUCCESSORS AND ASSIGNS (THE "DEBTOR PARTIES"), THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH HOLDER OF A CLAIM OR INTEREST, WHETHER OR NOT SUCH CLAIM IS ALLOWED AND WHETHER OR NOT SUCH HOLDER OF A CLAIM OR INTEREST HAS VOTED TO ACCEPT OR REJECT THE PLAN, TO THE MAXIMUM EXTENT OF APPLICABLE LAW, DISCHARGES AND RELEASES AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO EACH OF THE DEBTOR PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, LIABILITIES WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF SUCH EFFECTIVE DATE IN LAW, EQUITY OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, THE ESTATE, THE PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR

EVENTS GIVING RISE TO, ANY CLAIMS OR INTEREST THAT IS COMPRISED THEREOF, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY OF THE DEBTOR PARTIES AND ANY OF THE HOLDERS OF CLAIMS OR INTEREST, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASE, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATED TO THE CHAPTER 11 CASE, UPON ANY OTHER ACT OR OMMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE SUCH EFFECTIVE DATE, AND THOSE THAT ANY OF THE RELEASORS WOULD HAVE BEEN LEGALLY ENTITTLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF THE RELEASING PARTIES; THE FOREGOING GENERAL RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES OF THE RELEASORS EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, OR RELATED DOCUMENTS (INCLUDING THE TREATMENT OF CLAIMS HEREUNDER); PROVIDED FURTHER, THAT NOTHING HEREIN SHALL ACT AS A RELEASE OF ANY NON-DEBTOR CO-OBLIGOR(S) AND/OR GUARANTOR(S) ON THE DEBTS DUE AND OWING TO HFC, FMCC, ALLY AND GM,  UNLESS AND UNTIL SUCH DEBTS HAVE BEEN PAID IN FULL AS PROVIDED UNDER THE PLAN; PROVIDED FURTHER THAT NOTHING HEREIN SHALL LIMIT THE LIABILITY FOR CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT CONSTITUTES GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES. IN ADDITION, THE RELEASE PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

**9.5    Exculpation.** TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE §1125(e), NEITHER THE DEBTOR, NOR ITS RETAINED ADVISORS, ACCOUNTANTS, AND ATTORNEYS, NOR THE SUBCHAPTER V TRUSTEE, NOR THE DISBURSING AGENT, SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST FOR ANY ACT OR OMISSION DURING THE PENDENCY OF THE CHAPTER 11 CASE IN CONNECTION WITH, OR ARISING OUT OF, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE PROPERTY OR CASH TO BE DISTRIBUTED UNDER THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING EXCULPATION SHALL HAVE NO EFFECT ON THE LIABILITY OF AN ENTITY WHICH RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM GROSS

NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTOR AND ITS OFFICER SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN. IN ADDITION, THE EXCULPATION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

**9.6**   **Binding Effect.** ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES AND SETTLEMENTS CONTAINED IN THE PLAN.   Except as provided in Bankruptcy Code §§ 1141 or 1192, as applicable, the provisions of this Plan shall, upon entry of the Confirmation Order, bind the Debtor, each and every Claimant and holder of an Interest, and each party in interest, whether or not the Claim of such Claimant or Interests of such holder or party is provided for by the Plan and whether or not such Claimant or Interest holder, or party has accepted or has rejected the Plan. All payments made under the Plan will be in full and final satisfaction of the Allowed Claims of creditors. Entry of the Confirmation Order shall also constitute the determination by the Bankruptcy Court that the Debtor Parties and the Released Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among others, Bankruptcy Code §§ 1125(e) and 1129(a)(3), with respect to the foregoing.

## ARTICLE 10: OTHER PROVISIONS

10.1.   Modification. The Debtor may amend, modify or withdraw the Plan at any time prior to the Confirmation Date. The Debtor may amend or modify this Plan in accordance with §1193 of the Bankruptcy Code at any time on or prior to the Effective Date. After the Effective Date, Debtor may propose amendments to the Plan for approval by the Bankruptcy Court.

10.2   Other default provisions.  In the event the Plan is confirmed pursuant to 11 U.S.C. §1191(b), the following default provisions shall apply:    Pursuant to 11 U.S.C. §1191(c)(3), in the event that payments are not made by the Debtor as required by the Plan and Confirmation Order, creditors and parties-in-interest shall have the right to seek dismissal or conversion of the Bankruptcy Case.  Creditors holding liens against particular assets of the Debtor shall also have the right to file a motion for relief from the automatic stay.  The Bankruptcy Court shall retain jurisdiction to determine all matters related to enforcement of the Plan and Confirmation Order.

10.3   Vesting of Estate Property and Effect of Default. On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in Reorganized Debtor, free and clear of all Claims and Interests other than any contractual secured claims granted under

any lending agreement, on the condition that the reorganized Debtor complies with the terms of the Plan, including the making of all payments to creditors provided for in such Plan. If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

10.04.    Retention and pursuit of claims.  Any and all Litigation Claims owned by, accruing to or assertable by the Debtor shall remain assets of the Debtor's bankruptcy estate pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code.  Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, only the Debtor shall have the right to pursue or not to pursue, or, subject to the terms of this Plan, compromise or settle any Litigation Claims owned or held by the Debtor or its Estate as of the Effective Date. From and after the Effective Date, the Debtor may commence, litigate, and settle any Litigation Claims or rights to payment or claims that belong to the Debtor that may be pending on the Effective Date or instituted by the Debtor after the Effective Date. Other than as set forth herein, no other Person may pursue such Litigation Claims after the Effective Date.  The Debtor may pursue Litigation Claims without the need for filing any motion seeking authority to do the same.    Furthermore, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) shall also continue to exist for the benefit of the Debtor and shall vest in the Debtor and its representatives and shall also be preserved for and as to the Debtor. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all Litigation Claims and approve any such settlement, whether commenced prior to or after confirmation of the Plan and the Effective Date.

Dated:        February 26, 2024

                                                ICR GROUP, LLC
                                                Debtor and Debtor-In-Possession


                                                By: _/s/ Isaac Birnhack_____
                                                Isaac Birnhack, Managing Member
                                                of AEZ Rent A Car LLC, the Sole
                                                Member of ICR Group, LLC

13

EXHIBIT A

EXHIBIT A - Liquidation Analysis for ICR GROUP, LLC (24-40151-JMM)

| Assets | Scheduled/Appraised Value | Liquidation Value |
|---|---|---|
| Cash on hand | $0 | $0 |
| Vehicles (47) | $1,491,000[1] | $1,100,000[2] |
| Receivable (AEZ) | Unknown | $0[3] |
| | | |
| **ESTIMATED RECOVERY BY CH 7 TRUSTEE** | | **$1,100,000** |
| Payments to secured creditors, administrative expenses and priority claims | | |
| Secured Creditor (HFC) | | ($732,482)[4] |
| Secured Creditor (Ford) | | ($209,636)[5] |
| Secured Creditor (GM) | | ($82,052)[6] |
| Secured Creditor (Ally) | | ($62,196)[7] |

---

[1] Based on the Manheim Market Report ("MMR") for December 2023.  MMR is used to provide wholesale values and is relied upon in the Debtor's industry.

[2]  This estimated recovery is due to (a) the liens against the vehicles held by Ford/Ally/GM/HFC; (b) the time between the MMR valuation date (December 2023) and the actual date of sale which could be late 2024, and (c) the costs of the sale (title/tax/transportation/delivery/broker).   Moreover, HFC asserts a security interest in all of the Debtor's assets and therefore, the Debtor believes that any recovery in the sale/liquidation of the vehicles that is not reduced by liens and expenses of sale/liquidation, would be owed to HFC to the extent its secured claim is allowed.  In stark contrast to a hypothetical liquidation, under the Plan proposed by the Debtor, Allowed Secured Claims will be paid in full with interest, Allowed Administrative Claims would be paid in full and Allowed General Unsecured Claims will receive a 5% dividend.

[3] AEZ Rent A Car LLC ("AEZ") covers all necessary expenses of the vehicles it leases from ICR Group LLC.  AEZ is funding the Plan and is paying all allowed Secured Debts and Administrative debts in full.   AEZ will receive a release from the estate upon completion of all Plan payments.  The vehicles are owned in ICR based on a corporate model created for liability purposes.  There is no written agreement by and between and its wholly owned subsidiary, ICR Group LLC.  The Debtor listed the possibility of a claim in its schedules in an abundance of caution, but doe not believe that anything would be due ICR from AEZ as AEZ has fulfilled its obligations to ICR with the exception of payments to HFC.   AEZ is making all Plan payments to HFC under the proposed Plan thus curing this obligation.

[4] HFC would recover approximately 73% of its collateral value based on values as of the Petition date.  This would leave a deficiency balance of approximately $1,000,000 on its claim.

[5] This is the full Ford lien payoff amount.  Ford would recover 100% of its secured claim based on the value of its vehicles.

[6] GM would recover approximately 73% of its collateral value based on values as of the Petition date.  This would leave a deficiency balance of approximately $18,000 on its claim.

[7] Ally would recover approximately 73% of its collateral value based on values as of the Petition date.  This would leave a deficiency balance of approximately $30,000 on its claim.

| | | |
|---|---|---|
| Chapter 7 Trustee commission (est $56,250) | | ($13,634)[8] |
| Chapter 7 Trustee administrative expenses (attorney's fees only) (Est $20,000) | | $0 |
| Chapter 11 Administrative Claims (est. $100,000) | | $0 |
| Priority claims (set $50) | | $0 |
| Total Available for General Unsecured Claims (Est. $60,000) | | $0 |
| Payments to nonpriority unsecured claims | | |
| Balance for nonpriority unsecured claims | | $0 |
| Estimated Percentage of Claims Which Unsecured Creditors Would Have Received or Retained in a Chapter 7 Liquidation | | 0% |
| Projected Percentage of Claims Which Unsecured Creditors Would Receive in Chapter 11 Plan | | 5% |

Confirmation of the Plan is in the best interests of the creditors.  Under a liquidation, Allowed Secured Claims are paid in full with interest, Administrative Claims are paid in full and unsecured creditors shall receive a 5% dividend on their claims.

---

[8] This assumes a "carve out" from HFC's allowed secured claim.

# EXHIBIT B

# 5-YEAR PROJECTIONS (AEZ FUNDING ICR GROUP LLC PLAN)

| | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2024 | | | | | |
| **Income** | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 |
| Less - Commision & Processing | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 |
| **Gross Profit** | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 |
| **Expenses** | | | | | | | | | | |
| Automobile Expense | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Bank & Interest | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 |
| Insurance Expense | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 |
| Software & Internet | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 |
| Office Expense | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 |
| Payroll | 146,236.76 | 146,236.76 | 146,236.76 | 146,236.76 | 146,236.76 | 146,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 |
| Professional Fees | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 |
| Property Interest & Taxes | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 |
| Rent | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 |
| Repairs and Maintenance | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 |
| Other Tax | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 |
| Utilities | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 |
| Miscellaneous | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Car Payments | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 |
| **Total Expenses** | 417,314.13 | 417,314.13 | 417,314.13 | 533,271.32 | 444,271.32 | 444,271.32 | 447,271.32 | 451,271.32 | 447,271.32 | 447,271.32 |
| **Plan Payments (From AEZ)** | | | | 89,000 | | | | | | |
| Admin (Professionals and Sub V Trustee)* | | | | | | | | | | |
| FMCC | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 |
| Ally | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 |
| GM | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 |
| HFC Payments (60 Months)(See below detail) | | | | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 |
| GUC (Est.) | | | | | | | | $4,000 | | |
| **Net Operating Income (AEZ)** | 30,720.05 | 30,720.05 | 30,720.05 | (85,237.14) | 3,762.86 | 3,762.86 | 762.86 | (3,237.14) | 762.86 | 762.86 |
| **Cash On Hand (AEZ)** | 30,720.05 | 61,440.10 | 92,160.15 | 6,923.01 | 10,685.87 | 14,448.73 | 15,211.60 | 11,974.46 | 12,737.32 | 13,500.18 |

| HFC Claim Treatment | Original amount | Less: Vehicle Sales | Initial balance on April 1 2024 | 60 Month Terms | Interest (9.5%) | Total Monthly |
|---|---|---|---|---|---|---|
| Principal | 1,477,098.35 | 430,000.00 | 1,047,098.35 | | See Table | $21,991.02 |
| Interest | 117,618.65 | - | 117,618.65 | 1,960.31 | 0 | 1,960.31 |
| Late Fees | 23,409.45 | - | 23,409.45 | 390.16 | 0 | 390.16 |
| Legal Fees | 156,941.98 | - | 156,941.98 | 2,615.70 | 0 | 2,615.70 |
| | | | | | | 26,957.19 Monthly payment to HFC |

*Estimated. Subject to Court Approval.

5-YEAR PROJECTIONS (AEZ FUNDING ICR GROUP LLC PLAN)

| | January | February | March | April | May | June | 2025 July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 |
| Less - Commision & Processing | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 |
| Gross Profit | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 |
| Expenses | | | | | | | | | | | | |
| Automobile Expense | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Bank & Interest | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 |
| Insurance Expense | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 |
| Software & Internet | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 |
| Office Expense | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 |
| Payroll | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 |
| Professional Fees | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 |
| Property Interest & Taxes | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 |
| Rent | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 |
| Repairs and Maintenance | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 |
| Other Tax | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 |
| Utilities | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 |
| Miscellaneous | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Car Payments | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 |
| Plan Payments (From AEZ) | | | | | | | | | | | | |
| Admin (Professionals and Sub V Trustee)* | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 |
| FMCC | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 |
| Ally | $2,288.03 | $2,288.03 | $2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 |
| GM | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 |
| HFC Payments (60 Months)(See below detail) | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 |
| GUC (Est.) | | | | | | | | | | | | |
| Total Expenses | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 |
| Net Operating Income (AEZ) | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 |
| Cash On Hand (AEZ) | 14,263.04 | 15,035.91 | 15,788.77 | 16,551.63 | 17,314.49 | 18,077.35 | 18,840.21 | 19,603.08 | 20,365.94 | 21,128.80 | 21,891.66 | 22,654.52 |

Case 1-24-40151-jmm   Doc 26   Filed 02/27/24   Entered 02/27/24 21:15:00

**5-YEAR PROJECTIONS (AEZ FUNDING ICR GROUP LLC PLAN)**

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 2026 | | | | | | |
| Income | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 |
| Less - Commision & Processing | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 |
| Gross Profit | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 |
| Expenses | | | | | | | | | | | | |
| Automobile Expense | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Bank & Interest | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 |
| Insurance Expense | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 |
| Software & Internet | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 |
| Office Expense | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 |
| Payroll | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 |
| Professional Fees | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 |
| Property Interest & Taxes | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 |
| Rent | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 |
| Repairs and Maintenance | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 |
| Other Tax | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 |
| Utilities | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 |
| Miscellaneous | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Car Payments | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 | 128,743.35 |
| Plan Payments (From AEZ) | | | | | | | | | | | | |
| Admin (Professionals and Sub V Trustee)* | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 | $4,478.18 |
| FMCC | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 | $ 2,288.03 |
| Ally | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 | 2,288.03 |
| GM | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 |
| HFC Payments (60 Months)(See below detail) | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 |
| GUC (Est.) | | | | | | | | | | | | |
| Total Expenses | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 |
| Net Operating Income (AEZ) | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 |
| Cash On Hand (AEZ) | 23,417.38 | 24,180.25 | 24,943.11 | 25,705.97 | 26,468.83 | 27,231.69 | 27,994.55 | 28,757.42 | 29,520.28 | 30,283.14 | 31,046.00 | 31,808.86 |

5-YEAR PROJECTIONS (AEZ FUNDING ICR GROUP LLC PLAN)

| | | | | | | | 2027 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | January | February | March | April | May | June | July | August | September | October | November | December |
| Income | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 |
| Less - Commision & Processing | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 |
| Gross Profit | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 |
| **Expenses** | | | | | | | | | | | | |
| Automobile Expense | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Bank & Interest | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 |
| Insurance Expense | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 |
| Software & Internet | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 |
| Office Expense | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 |
| Payroll | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 |
| Professional Fees | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 |
| Property Interest & Taxes | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 |
| Rent | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 |
| Repairs and Maintenance | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 |
| Other Tax | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 |
| Utilities | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 |
| Miscellaneous | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Car Payments | 132,325.78 | 132,325.78 | 132,325.78 | 132,325.78 | 135,509.56 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 |

Plan Payments (from AEZ)

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Admin (Professionals and Sub V Trustee)* | $895.75 | $895.75 | $895.75 | $895.75 | | | | | | | | |
| FMCC | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | | | | | | | |
| Ally | | | | | | | | | | | | |
| GM | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | $2,288.03 | | | | | | | |
| HFC Payments (60 Months)(See below detail) | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 |
| GUC (Est.) | | | | | | | | | | | | |
| **Total Expenses** | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 |
| Net Operating Income (AEZ) | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 |
| Cash On Hand (AEZ) | 32,571.73 | 33,334.59 | 34,097.45 | 34,860.31 | 35,623.17 | 36,386.03 | 37,148.90 | 37,911.76 | 38,674.62 | 39,437.48 | 40,200.34 | 40,963.20 |

Case 1-24-40151-jmm   Doc 26   Filed 02/27/24   Entered 02/27/24 21:15:00

5-YEAR PROJECTIONS (AEZ FUNDING ICR GROUP LLC PLAN)

| | 2028 | | | | | | | | | | | | 2029 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | January | February | March | April | May | June | July | August | September | October | November | December | January | February | March | April | May |
| Income | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 | 467,596.25 |
| Less - Commission & Processing | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 | 19,562.07 |
| Gross Profit | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 | 448,034.18 |
| Expenses | | | | | | | | | | | | | | | | | |
| Automobile Expense | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Bank & Interest | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 | 5,711.76 |
| Insurance Expense | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 | 15,136.48 |
| Software & Internet | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 | 4,630.07 |
| Office Expense | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 | 19,922.76 |
| Payroll | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 | 149,236.76 |
| Professional Fees | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 | 10,686.63 |
| Property Interest & Taxes | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 | 16,813.68 |
| Rent | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 | 28,643.05 |
| Repairs and Maintenance | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 | 1,944.56 |
| Other Tax | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 | 649.93 |
| Utilities | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 | 9,140.87 |
| Miscellaneous | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Car Payments | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 | 137,797.59 |
| Plan Payments (from AEZ) | | | | | | | | | | | | | | | | | |
| Admin (Professionals and Sub V Trustee)* | | | | | | | | | | | | | | | | | |
| FMCC | | | | | | | | | | | | | | | | | |
| Ally | | | | | | | | | | | | | | | | | |
| GM | | | | | | | | | | | | | | | | | |
| HFC Payments (60 Months)(See below detail) | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 | 26,957.19 |
| GUC (Est.) | | | | | | | | | | | | | | | | | |
| Total Expenses | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 | 447,271.32 |
| Net Operating Income (AEZ) | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 | 762.86 |
| Cash On Hand (AEZ) | 41,726.07 | 42,488.93 | 43,251.79 | 44,014.65 | 44,777.51 | 45,540.38 | 46,303.24 | 47,066.10 | 47,828.96 | 48,591.82 | 49,354.68 | 50,117.55 | 50,880.41 | 51,643.27 | 52,406.13 | 53,168.99 | 53,931.85 |